[No. 2551.  Decided August 2, 1897.]

A. C. ANDERSON *et al.*, as *Executors*, *Appellants*, v. JOHN STADLMANN *et al.*, *Respondents*.

HOMESTEAD — HOW ACQUIRED — MORTGAGE BY HUSBAND — RIGHTS OF WIFE — ABANDONMENT.

The mere occupancy of a dwelling-house as a residence and homestead constitutes a selection as a homestead, under Code Proc., § 481, and affords notice to subsequent purchasers or incumbrancers, of the right to assert the exemption, even by the wife in the separate property of the husband.

A mortgage by the husband alone of his separate property in which the wife has a right to claim a homestead exemption, is void as to her, under Code Proc., § 483, providing that no mortgage of the homestead shall be valid against the wife, unless she shall join therein.

A failure to select a homestead in the manner designated by Laws 1895, p. 109, does not establish an abandonment of the homestead, as under Code Proc., § 481, the selection may be made at any time before sale.

Appeal from Superior Court, King County.—Hon. J. W. LANGLEY, Judge. Affirmed.

*White, Munday & Fulton*, for appellants.
*John L. Neagle*, and *Frank B. Wiestling*, for respondents.

The opinion of the court was delivered by

REAVIS, J.—On May 3, 1892, John Stadlmann, defendant, executed his promissory note in the sum of $1,300, payable in one year to the order of Osborne, deceased, and to secure the payment thereof executed and delivered a mortgage upon certain premises in the city of Seattle. In October, 1876, Stadlmann acquired this property by purchase. He was then an unmarried man; in October, 1880, he was married to the intervenor and respondent

Emma Stadlmann, and they jointly took up their residence on the premises thereafter mortgaged, and have continuously resided thereon; and with two children who had been born to them were residing thereon on May 3, 1892, when the mortgage was executed by the defendant John Stadlmann, his wife Emma Stadlmann not joining in the execution of the instrument. In September, 1892, the intervenor, Emma Stadlmann, was adjudged insane by the superior court of King county, and committed to the asylum at Steilacoom, where she has since been confined. In September, 1893, the defendant John Stadlmann was, upon his own petition, appointed general guardian of the estate of his wife Emma Stadlmann. The executors of the will of James Osborne, deceased, commenced this action for judgment upon the note and to foreclose the mortgage against the premises occupied by Stadlmann and wife and children.

To the complaint in foreclosure the intervenor and respondent, Emma Stadlmann, appeared by her guardian and by leave of court filed a complaint in intervention setting out the facts substantially as above stated, and praying that the premises described in the mortgage be adjudged and decreed the homestead of the defendant John Stadlmann and his family; and that the same be declared exempt from forced sale under execution to satisfy the note for which the mortgage was given as security.

No exceptions are taken by appellants to the findings of fact. The court found that John Stadlmann for himself, he being the head of the family, both neglects and refuses to claim said above described premises as the homestead exemption of himself and family as exempt from sale under execution to satisfy the note and mortgage. The superior court concluded that the plaintiffs were entitled to a judgment against the defendant John Stadlmann for

the amount evidenced by the promissory note, and that the mortgaged premises prior to and at the time of the execution and delivery of the mortgage constituted and ever since have constituted and do now constitute the homestead of the defendant and his wife and children; that the mortgage thereon is void as against Emma Stadlmann, the wife, and that the described mortgaged premises are exempt from sale under foreclosure to satisfy the note; and decreed a homestead exemption and costs in favor of intervenor and respondent, Emma Stadlmann.

1. It is maintained by counsel for appellants that the premises, as separate property of the husband, could not be selected by the wife as a homestead, under § 1404, vol. 1, Hill's Code. But this section provides that only one homestead shall be selected or held for the family and it must embrace the dwelling house in which one or both of them reside. Appellants also maintain that when the defendant Stadlmann and wife fixed their residence upon the mortgaged premises, the act of November 8, 1877, was in force (Laws 1877, p. 72, § 346), providing that to entitle a person to the benefit of the homestead exemption he or she shall cause the word "homestead" to be entered of record in the margin of his recorded title to the same, and the date of such entry. Such entry was not made in this case; but the foregoing act of 1877 was repealed in 1881. Since 1881 § 481, vol. 2, Hill's Code, has been the law and provides such homestead may be selected at any time before sale.

This court has held in *Wiss v. Stewart*, 16 Wash. 376 (47 Pac. 736), that the act of March 13, 1895 (Laws 1895, p. 109), does not affect the provision in relation to the time of making the selection of a homestead, but simply undertakes to direct the manner of such selection, and the provision that such homestead may be selected at any

time before sale is still in effect. Under the law of 1881, which was in force when the mortgage in controversy was executed by defendant John Stadlmann, the only evidence of the homestead exemption in this state was occupancy by the family of the premises and dwelling thereon. In the case at bar, John Stadlmann established his residence thereon with his wife, the intervenor, and they had lived thereon for many years, and were residing there when the mortgage was executed. The wife could not make selection of any other dwelling, because it required the occupancy of the family to impress upon it the homestead character, and there could be but one homestead appropriated by the family.

This court said in *Philbrick v. Andrews*, 8 Wash. 7 (35 Pac. 358):

" It is necessary that the homestead should be occupied as such, and this is probably the only way by which it can be selected under our present laws; certainly it is the most effectual way, 'and the defendant, with his family, was so occupying the land in question during all of said times, and appellant was bound to take notice of such occupancy when he purchased; in fact, he had actual notice."

So in the present case at the time of the execution of the mortgage the mortgagee had actual notice of the residence of the defendant Stadlmann and his family upon the premises.

Section 482, vol. 2, Hill's Code, provides:

" When any 'person dies seised of a homestead, leaving a widow or husband or minor children, the survivors shall be entitled to the homestead."

We think the homestead was impressed upon the mortgaged premises by the actual and continued residence thereon of the defendant Stadlmann and family. Section 483, vol. 2, Hill's Code, provides:

" Nothing herein shall be construed to prevent the owner of a homestead from voluntarily mortgaging the same. But no mortgage shall be valid against the wife of the mortgagor, unless she shall sign and acknowledge the same."

The policy of the homestead exemption in this state is well understood, and while counsel for appellants contend there is a distinction between the statutes of California, Michigan and Wisconsin, particularly referred to by respondent, and the statutes of this state, we conclude that the object in each of them is the same. The purpose of the homestead exemption is to secure a shelter and home for the wife and family, and the policy of the law will permit an abandonment of such home only in the manner strictly pointed out by the statute.

Thompson on Homesteads and Exemptions, § 474, says:

" Where the statute provides that, in order to make a valid conveyance of the homestead, the wife of the owner must join in the deed, a conveyance of the homestead by the husband alone is held by most courts to be *void*, not only as to the wife, but also as to the husband."

But it is urged by appellants that the failure of the defendants to select the homestead in the manner designated by the act of March 13, 1895, *supra*, must be treated as an abandonment of the homestead. If this were true, a conclusive answer to the contention would be that the intervenor has been insane since the law went into effect, and that in any view she could at any time before the sale make such formal selection in conjunction with her husband; but if the husband now declines to claim such homestead, the mortgaged premises having once been impressed with that character by him, the wife would, perhaps, so long as such residence continues, have the right to protect the homestead when she had stated such refusal on the part of her husband. At any rate, the wife,

who did not join in the execution of the mortgage, now in a formal manner in court asks that the homestead be released from the force and effect of a void mortgage.

As suggested heretofore, there is no substantial difference to be found in distinguishing the statutes from the states in the cases cited by respondent. The following cases are noted in consonance with these views: *Barber v. Babel*, 36 Cal. 11; *Gleason v. Spray*, 81 Cal. 217 (15 Am. St. Rep. 47, 22 Pac. 551); *Dye v. Mann*, 10 Mich. 291, especially 296; *Williams v. Starr*, 5 Wis. 550; 65 Am. Dec. 484, 485, notes; *American Savings & Loan Ass'n v. Burghardt et al.*,      Mont.     (48 Pac. 391).

The judgment of the superior court is affirmed.

SCOTT, C. J., and GORDON and DUNBAR, JJ., concur.