[No. 4532. Decided June 26, 1903.]

F. H. WHITWORTH *et ux., Respondents,* v. GEORGE C. McKEE, *Appellant.*

JUDGMENTS — COMMENCEMENT OF LIEN.

Where appeal has been taken from a judgment, the lien of the judgment does not become dormant until five years after the

final determination of the cause on appeal, under Bal. Code, § 5132, which provides that the real estate of a judgment debtor shall be bound to satisfy any judgment "for the period of five years from the day on which such judgment was rendered," and Id., § 5143, which provides that "in all cases of an appeal the date of final judgment in the supreme court shall be the time from which said five years shall commence to run."

SAME — FAILURE TO ISSUE EXECUTIONS FOR FIVE YEARS — REPEAL OF STATUTE.

Bal. Code, § 5192, which authorizes the issuance of execution by the judgment creditor at any time, provided a period of five years shall not have elapsed since the issuance of a prior execution, in which case execution should not issue until such judgment should be revived, has been modified and superseded by the later enactment of Bal. Code, §§ 5132, 5143, which limit the lien of all judgments to a period of five years, whether execution has been issued on them in the meantime or not, which, in cases of appeal, shall extend from the date of final judgment in the appellate court.

EXECUTION SALE — ACTION TO SET ASIDE — EVIDENCE — SHOWING AS TO PERSONALTY UNLEVIED ON.

In an action to set aside an execution sale of realty, a finding by the court that the judgment debtor had $1,000 worth of personal property subject to execution was not warranted, where the testimony showed that this property consisted of household goods, office furniture, and a civil engineer's outfit of surveying instruments, since the statute exempts household goods to the value of $500, and tools of trade to the value of $500, and permits the selection of additional personal property to the value of $250.

SAME — SALE OF REAL ESTATE — EXISTENCE OF PERSONALTY — PRESUMPTIONS.

A sheriff's return of the sale of real property is not void on its face, by reason of failure to show that no personal property could be found out of which the judgment could be made, but, in a collateral action to set aside the sale, the presumption would be that the officer performed his duty in this respect.

SAME — NOTICE TO JUDGMENT DEBTOR.

Bal. Code, § 4886a, which provides that after a party has once appeared in an action he shall be entitled to at least three days' notice of any trial, motion, application, sale or proceeding therein has no application to proceedings had to enforce the judgment, but merely defines the rights of the respective parties before judgment, and hence would not require notice to a debtor of

motion for the confirmation of an execution sale.

SAME — SALES GOVERNED BY EXISTING LAW.

The sale of real property under execution has been governed, since its enactment, by Laws 1899, p. 85, whether the execution was issued under a judgment rendered prior or subsequent thereto.

SAME — NOTICES OF SALE — POSTING — INSUFFICIENCY.

Laws 1899, p. 86, § 3, requiring the sheriff to post notices of the execution sale of realty "in three public places in the county, one of which shall be at the court house door, where the property is to be sold, and one posted on the property to be sold," is satisfied by the posting in a conspicuous place on the property levied on, although it may not be a "public place"; and by the posting upon one of several tracts, although somewhat widely separated, instead of upon each parcel to be sold.

SAME — PRESUMPTION AS TO OFFICIAL DUTY.

A sheriff's return reciting that notice of sale was posted in a public place at the court house is not void on its face, under a statute prescribing that the notice shall be posted at the court house door, inasmuch as it does not negative the fact that it was posted at the required place, and the presumption is that the officer complied with the law.

HOMESTEAD — NATURE OF RIGHT — ENACTMENT OF NEW LAW — EFFECT.

The passage of the homestead law of 1895 (Bal. Code, § 5214 *et seq.*) whereby the value of the property thereby exempted was increased, but a declaration of the claim was required to be executed, acknowledged and filed with the county auditor, did not operate as an abrogation of homestead rights acquired under the prior law, which had imposed no such duty on the claimant, inasmuch as a homestead is in the nature of a vested interest, which would not be destroyed by the mere repeal of the statute authorizing its acquisition.

SAME — EXCESS VALUE SUBJECT TO SALE — HOW SOLD.

Under the statutes of this state, a sale of homestead under a general execution is absolutely void; it can be sold at no time except for its excess of value, and this can be reached only by a sale in the manner provided by the law in force at the time of its selection.

EXECUTION SALE — ACTION TO SET ASIDE — DAMAGES.

In an action to set aside an execution sale of real property a judgment for more than nominal damages was erroneous, where

the only element of damage shown was the worry and discomfort of plaintiff, and that he could make no disposition of the property because of the continuance of the suit,—there being no showing of an actual loss by reason of that fact.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Reversed.

*James McNeny* and *R. J. Huston,* for appellant.

*Greene & Griffiths,* for respondents.

The opinion of the court was delivered by

FULLERTON, C. J.—On January 18, 1896, the appellant recovered a judgment against the respondents in the superior court of King county for the sum of $4,357.60. The respondents shortly thereafter appealed from the judgment to this court, giving a cost bond only, which court, after a hearing on the merits of this appeal, affirmed the judgment, entering its judgment of affirmance on December 18, 1896. On October 10, 1901, the appellant caused an execution to issue on the judgment, which was placed in the hands of the sheriff, who levied upon and sold thereunder certain real property described as follows: "Lot nine (9) in block nine (9) of Fern Addition to the city of Seattle; lots one (1), two (2), and three (3) in block six (6) of Canal Addition to the city of Seattle; west one-half (½) of lots two (2) and three (3) of block sixteen (16) of Boren's Plat of an addition to the town (now city) of Seattle, all situate in King county, state of Washington." The lots were sold in three separate parcels, each of which was bid in by the appellant; the first for the sum of $150, the second for the sum of $150, and the third for the sum of $1,500. Due return of the sale was made by the sheriff to the court on the 16th day of November, 1901, whereupon the sale was docketed for confirma-

tion, and afterwards confirmed by an order entered on December 16, 1901. This action was brought to set aside the sale. The court found that the judgment under which the sale was had was void, that the sale was a nullity, that the same constituted a cloud upon the respondents' title which they were entitled to have removed, that the respondents had been damaged by the sale in the sum of $500, and entered a judgment vacating and setting aside the sale, and for damages in the amount so found, together with the costs and disbursements of the action. This appeal is from that judgment. As the questions suggested by the assignments of error can best be considered by examining in order the several objections urged against the validity of the sale, it is in that manner we shall consider them.

1. By a reference to the dates above given it will be noticed that the execution under which the property was sold was issued more than five years after the date of the rendition by the superior court of the judgment on which it was based, but within five years from the date of its affirmance by this court. The respondents contend, and the trial court held, that, because more than five years had elapsed between the date of the rendition of the judgment by the superior court and the date of the issuance of the execution, that the judgment was at that time dormant and incapable of supporting an execution, and that the sale thereunder was void, under the rule of the cases of *Brier v. Traders' National Bank,* 24 Wash. 695 (64 Pac. 831); *Packwood v. Briggs,* 25 Wash. 530 (65 Pac. 846); *Hardin v. Day,* 29 Wash. 664 (70 Pac. 118), and *Hewitt v. Root,* 31 Wash. 312 (71 Pac. 1021). These cases do lay down the rule that a judgment becomes dormant and incapable of supporting an execution at the end

of five years from the date of its rendition, but none of them undertakes to determine at what date a judgment shall be deemed to have been rendered, within the meaning of the statute, in a cause which has been appealed to this court and the appeal determined here upon its merits; that is to say, whether the five year period commences to run in such a case from the date of the rendition of the judgment by the superior court, or from the date of the final judgment of this court.    The statute therefore must be consulted to determine the question.    Those directly applicable are the following (citations from Ballinger's Code):

"Sec. 5132.    The real estate of any judgment debtor and such as he may acquire, shall be held and bound to satisfy any judgment of the district or circuit court of the United States, if rendered in this state, or of the superior or supreme court, or any judgment of a justice of the peace for the period of five years from the day on which said judgment was rendered, and such judgments shall be a lien thereupon to commence as follows:    Judgments of the superior court of the county in which real estate of the judgment debtor is situated, from the date of the entry thereof; judgments of the district or circuit courts of the United States, if rendered in this state; judgments of the supreme court; judgments of the superior court of any county other than the county in which said judgment was rendered, and judgments of a justice of the peace, from the time of the filing and indexing of a duly certified transscript or abstract of such judgments, as provided by this chapter, with the county clerk of the county in which said real estate is situated."

"Sec. 5143.    An appeal to the supreme court or stay of execution shall not affect any existing lien; and in all cases of an appeal the date of final judgment in the supreme court shall be the time from which said five years shall commence to run.    Personal property shall only be held from the time it is actually levied upon."

The learned counsel for the respondents have submitted

an elaborate argument in an endeavor to show that a proper
construction of these statutes requires the holding that the
five year period commences to run at the date of the rendi-
tion of the judgment by the superior court in all cases,
notwithstanding the apparent provision to the contrary
contained in the last section quoted.   But, without follow-
ing the argument in detail, we think the contention cannot
be sustained.   Plainly, the "said five years" referred to
in the last section was the "period of five years" mentioned
in the first, during which the land of the judgment debtor
should be bound by the judgment.   It is equally plain,
also, that the statute fixes the date of final judgment in
the supreme court as the time from which the five year
period shall commence to run "in all cases of an appeal,"
regardless of the nature of the case, or whether or not
the judgment appealed from is affirmed on an appeal with
or without a supersedeas bond.   The legislature can, of
course, fix the duration of a judgment lien at such a length
of time as suits its pleasure; it can prescribe the time of
its commencement and its ending, and make these hinge
on the happening of particular events.   And when it has
done this in language clear and unmistakable, as it has
in the statute before us, there is no room for construction,
and the courts can do nothing else than give the statute
effect.   As the judgment on which the execution was issued
was affirmed on appeal by this court on December 18, 1886,
and the execution was issued on October 10, 1901, it was
within the period of five years from the date of its rendi-
tion within the meaning of the statute, and consequently
was not void for want of a live judgment to support it.
There is nothing in *Sears v. Kilbourne,* 28 Wash. 194 (68
Pac. 450), which is against this view of the statute.   On
the contrary, the distinction here made was clearly pointed
out in the opinion in that case, where the court says:

"The statutes of this state limit the lien of a judgment to five years from the date of its rendition, whether the same be a judgment of this court, the superior court, or that of a justice of the peace; providing, however, that, where an appeal is taken to the supreme court on any judgment 'the date of final judgment in the supreme court shall be the time from which said five years commence to run.'  Bal. Code, § 5132, 5143."

2.    It is next said that the execution is void because of the clause, found in § 5192 of the Code, which prohibits the issuance of an execution on a judgment after the lapse of a period of five years without the issuance of an execution.    The whole of the section is as follows:

"The party in whose favor judgment has been given or may hereafter be given or entered in any court of record in this state or the territory of Washington may have an execution issued at any time for the collection or enforcement of the same:  Providing, That if a period of five years shall have elapsed without an execution being issued on such judgment, then execution shall not issue thereafter until such judgment shall be revived in the manner provided for by law."

This section was enacted in its present form by the territorial legislative assembly of 1888 (Session Laws 1888, p. 94), and was doubtless intended to confer on the judgment creditor the power to keep his judgment alive indefinitely by the process of causing execution to issue thereon at intervals of time of less than five years' duration. In so far, however, as it had this effect, it was superseded by § 5132, *supra,* which was enacted later in time, and which limits the lien of all judgments to a period of five years, whether execution has been issued on them in the mean time or not.    Now, it will be noticed that the particular language which is thought to render this execution void is found in the proviso, and we think it may fairly be

questioned whether it did not fall by the repeal of the enacting part of the statute. A proviso is very rarely of itself an enacting clause in the sense that it makes that law which was not so before. Its natural and appropriate office is to limit and qualify what is expressly enacted, and is usually so identified with the text of a statute which it qualifies that, if such enacting part is repealed by a subsequent statute repugnant to it, the proviso will fall also. Sutherland, Statutory Construction, § 222. In the statute before us it is plain that the proviso was intended as a limitation on what precedes it. It is first enacted that an execution may issue on a judgment without limitation as to time either of the rendition of the judgment or of the issuance of an execution thereon, while the proviso limits the right to such judgments only as have had an execution issued on them within a period of five years. It was, therefore, a dependent proviso, which would be repealed by the repeal of the enacting clause. But if this were not so, it must be held to have been modified by §§ 5132 and 5143, *supra*. The evident purpose of these sections was to provide fixed periods of time within which an execution or a judgment could be issued. These were within five years from the date of the rendition of the judgment if no appeal is taken therefrom to the supreme court, but, if appeal be taken, then within five years from the time of the final judgment of the appellate court. As this judgment was appealed from and as the execution was issued within five years from the date of the final judgment of the appellate court, it was in time and was a lawful execution.

3.   The writ of execution was a general writ directed against the property of the judgment debtors, and the return of the sheriff thereon does not show that he made

search for personal property before levying upon the real estate which he afterwards sold under the writ. It is said that this renders the sale void for two reasons; first, because the evidence shows, and the court found, that the respondents had some one thousand dollars worth of personal property subject to execution; and second, because such a return is void on its face. Taking up the question of the evidence first, all we find in the record is the following.

"Q. State whether or not you are the owner, or your wife, or both of you, owned any personal property at the time of the issuance of this writ of execution, on or about October 10, 1901. (After objection). A. Yes, sir: We had, of course, some personal property; we had our household goods; we had a piano; I had my instruments I was working with—I suppose that was personal property. Q. What kind of instruments do you refer to? A. A transit and other instruments in my use as an engineer. The Court: A general surveyor's outfit? A. Yes, sir. I had a safe in my office, and office furniture. Q. About what was that all worth at the time this writ was issued? A. I suppose upwards of a thousand dollars. I, of course, couldn't replace it for anything like that, but perhaps, sold under the hammer, it would't bring any more."

But surely in view of the liberal exemption laws of this state there is nothing here which justifies the finding that the respondents had personal property subject to execution of the value of $1,000. Indeed, it would seem that there was no property at all on which the sheriff could have safely levied. The statute exempts to each householder within this state household goods to the value of $500, and such other of his personal property as he may select to the value of $250. The instruments and tools of trade used by the judgment debtor in his business as a surveyor were also exempt to the value of $500. There are other

designations of exemptions in the statute which this judgment debtor might have been able to have availed himself of had his personalty been levied upon, but the enumerated designations are sufficient to exempt all and more of the very property which he describes.  Clearly, therefore, if it be necessary to show that there was personal property on which the sheriff might have levied in order to convict him of a dereliction of duty, the evidence here utterly fails to do so.

As to the second objection, it is not the rule that a sale of real property is void merely because the sheriff failed to return that he had been unable to find sufficient personalty to satisfy the writ before levying upon the real estate of the judgment debtor, even when the statute expressly provides, which ours does not, that the sheriff shall first levy upon the debtor's personal property.  In a collateral action brought to set aside the sale, it will be presumed that the officer performed his duty in this respect.  But statutes of this character are rarely held mandatory; the better rule is that they are directory merely, furnishing a ground upon which a confirmation of a sale might be successfully resisted, were it shown that there was personal property out of which the judgment could have been satisfied, but they do not make a return of the sale of real property, which fails to show that no personal property could be found out of which the judgment could be made, void on its face.  On the contrary, such a return is good as against any form of attack other than direct assault.  2 Freeman, Executions (3d ed.), § 279.  In any view of this record, therefore, the sale is not void, because of the silence of the return as to personal property.

4.   The court confirmed the sale without requiring notice of the motion therefor to be served on the respond-

ents, and it is urged that the order of confirmation was without jurisdiction and void for that reason. The statute (Bal. Code, § 4886a) does provide that after a party has once appeared in an action he shall have notice of all subsequent proceedings, and that he is "entitled to at least three days' notice of any trial, motion, application, sale or proceeding therein, . . .", but it is evident that these statutes are intended to define the rights of the respective parties before judgment, and have no application to proceedings had to enforce the judgment. In proceedings to enforce the execution, the statutory notices applicable thereto are all that the statute authorizes or requires to be given. This being true, other or different notices could add nothing to the validity of the proceedings.

5.    It is next contended that no legal notice of the time and place of sale was given. In view of the line of argument pursued by counsel in discussing this branch of the case as well as others of the objections made, it is well to state that the statute of 1899 (Laws 1899, p. 85 *et seq.*) has, since its enactment, governed the sale of real property under execution, whether the execution was issued upon a judgment rendered prior or subsequent thereto, and is the statute to which the sale in this case must conform if it is to be upheld. That statute provides, among other things:

"Sec. 3.    Before the sale of property under execution, order of sale or decree, notice thereof shall be given as follows: . . . 2. In case of real property, by posting a similar notice, particularly describing the property for a period of not less than four (4) weeks prior to the day of sale, in three (3) public places in the county, one of which shall be at the court house door, where the property is to be sold, and one posted on the property to be sold, and publishing a copy thereof once a week, consecutively for the same period, in a newspaper of general circulation published in the county. . ."

The sheriff's return recites:

"... that I received the annexed writ of execution on the 10th day of October, 1901, ... ; that I duly served said writ ... by levying upon all the right, title and interest of the defendants in said writ of execution named, in and to the following real estate, to wit, ... by filing a copy of said writ, together with a description of said property, with the auditor, and a similar copy with the clerk of said King county, and that under and by virtue of said writ of execution, I advertised the foregoing described property to be sold by me at public auction at the court house door, in said King county, on the 16th day of November, 1901, at 10 o'clock a. m.; that previous to said sale I ... caused said notice to be posted in three public places in said county, one of which was in a conspicuous place on the property so advertised as aforesaid, one in the United States postoffice, and one at the court house, all in King county, state of Washington, ... ."

The principal objection on this branch of the case is that the sheriff failed to post a sufficient number of notices. The lands sold consisted of three separate tracts somewhat widely separated, and the return shows that but three notices were posted, one only of which was on the land. The contention is that the statute requires a notice of sale to be posted on each tract advertised to be sold, and that this sale is void because of the failure of the return to show that the notices of sale were so posted. But it seems to us that this contention is not supported by the statute. A sheriff having in charge a writ of execution may lawfully levy upon more than one tract of land belonging to the judgment debtor, and may lawfully advertise and sell all, or any number less than all, of the several tracts he so levies upon. This is clearly the meaning of the statute. The section prescribing the manner of sale expressly provides that "when the sale is of real property, consisting of

several known lots or parcels, they shall be sold separately
or otherwise as is likely, to bring the highest price," and
after "sufficient property has been sold to satisfy the exe-
cution no more shall be sold;" leaving, it seems to us, no
other conclusion than that the sheriff may lawfully levy
upon several distinct tracts and advertise and sell them
as one sale. It is equally clear that but three notices of
sale need be posted to lawfully advertise a sale, as the stat-
ute so states in words incapable of any other meaning. As
one of these must be posted at the court house door of the
county in which the land is sold, it would be impossible to
sell three separate tracts at one sale if a notice must be
posted on each tract, as lawful notice of the sale could not
be given;—it being remembered that a notice not provided
for by law is not notice. But while we think the return
shows a due compliance with the statute in this regard,
still it would not necessarily have been fatal to the sale had
it been otherwise.

"The authorities very generally hold that statutes re-
quiring notice are directory rather than mandatory, and
that mistakes in the notice or even a failure to give notice
will not avoid the sale as against a purchaser not himself
in fault." 20 Enc. Pl. & Pr. 200, and cases cited.

Other objections to the notice are that none of the tracts
of land sold was in a public place, and hence a posting on
the land would not be a compliance with the statute, and
that the return fails to state that a notice was posted at the
court house door. Neither of these objections are of merit.
As to the first, it is true that the statute requires the notices
to be posted in public places, but it specifically directs that
one of them be posted on the property to be sold. This
means that the notice posted on the land must be in a con-
spicuous place, that is, not in an obscure or hidden place,
but it does not mean that a public place must be found on

the land before a lawful notice can be given.   The construction of the statute contended for would make it impossible to sell this land on execution at all, as a lawful sale thereof could not be made without posting a notice on the land, and a notice could not be lawfully posted on the land because no public place can be found thereon.   The term "public place" is used in the statute in a relative sense, and the requirement is complied with when the notice is posted in a place which would be public when compared with other places within the prescribed area.   As to the second objection, a return reciting that the notice was posted in a public place at the court house is not void on its face under a statute prescribing that the notice shall be posted at the court house door, inasmuch as it does not negative the fact that it was posted at the required place. It is always presumed that an officer performs his duty and complies with the law, and unless his return of his doings negatives that idea, they will be presumed regular; that is to say, an incomplete return is not of itself fatal to the validity of the officer's acts; it must appear affirmatively, either by the return itself or extraneous evidence, that there was a failure to comply with the law.   This becomes clear when it is remembered that an officer's return on a writ is but his recital of the acts performed by him thereunder, not the acts themselves.   It is on this latter principle also that an officer's return may always be amended so as to make it conform to the truth.

6.   It appears that the lots in Boren's plat were, at the time of the levy and sale, occupied by the respondents as a home, and that they had been so thus occupied ever since the year 1881.   The trial court found that these lots constituted the homestead of the respondents, and were exempt from levy and sale under a general execution such

as was issued in the present case, and that the attempted
sale passed no title to them.   This contention is urged by
the respondents in this court.   The contract on which the
judgment was rendered was entered into in 1893.   The
law in force at that time exempted to every householder
who was the head of a family a homestead, while occupied
as such, consisting of a house and lot or lots in any city,
or a farm of any number of acres, so that the value of the
same did not exceed one thousand dollars.   No mode was
provided for the selection of such a homestead, the law
simply providing that it could be selected at any time be-
fore sale.   The statute further provided that, whenever the
judgment creditor should be of the opinion that any home-
stead claimed under the provisions of the act exceeded in
value the sum of one thousand dollars, he could have the
same sold on filing an affidavit to that effect with the clerk
of the superior court.   Under these statutes we held that
no formal declaration was necessary to select a homestead,
but that its mere occupancy as such by the claimant and
his family was sufficient.   *Philbrick v. Andrews,* 8 Wash.
7 (35 Pac. 358); *Anderson v. Stadlmann,* 17 Wash. 433
(49 Pac. 1070).   We also held that a general judgment
was not a lien upon the homestead of the judgment debtor,
and that a sale of the homestead under a general execution
was void, and passed no title to the execution purchaser.
*Asher v. Sekofsky,* 10 Wash. 379 (38 Pac. 1133); *Trad-
ers' National Bank v. Schorr,* 20 Wsah. 1 (54 Pac. 543,
72 Am. St. Rep. 17); *Smalley v. Laugenour,* 30 Wash.
307 (70 Pac. 786).   In 1895 a new homestead law was
enacted.   Ballinger's Code, § 5214 *et seq.*   It provides
that the homestead shall consist of the dwelling house in
which the claimant resides and the land on which the same
is situated, and is selected by executing and filing for rec-

ord in the auditor's office a declaration of homestead, containing certain recitals, acknowledged in the manner that a grant of real property is required to be acknowledged. While a specific tract is required to be selected, its value is limited to two thousand dollars, and if, in the opinion of a judgment creditor, the homestead selected by his debtor is of greater value than two thousand dollars, he may have the excess applied to the satisfaction of his judgment by appraisal proceedings instituted in the superior court of the county in which the homestead is situated. Counsel, however, have no quarrel as to which of these statutes affects the question here. They agree that the latter has no application; presumably, although it is not so stated, because it materially increases the value of the homestead over that allowed when the contract was entered into on which the judgment was founded, and is thus in violation of that provision of the federal constitution which prohibits a state from enacting a law impairing the obligation of a contract; but counsel for the appellant contends that the statute of 1895 repealed the former laws, and because thereof the respondents cannot claim under the statute of 1895, hence, there is no statute at all authorizing them to claim a homestead as against this judgment. We agree with counsel that the later statute so far superseded the earlier one that no new homestead right can now be acquired under it, or could have been so acquired since the passage of the later statute, and that it is now necessary in order to impress real property with a homestead right, to execute, acknowledge, and file with the county auditor a declaration of homestead as provided in the later statute. But we cannot agree with the contention that the statute of 1895 so far repealed the prior laws as to destroy all the then existing homesteads and thus make subject to execu-

tion real property which at the time of its passage was not
so subject. That this was not the legislative intent is evi-
dent from the act itself. There is no express repeal of the
existing laws, and so far from purporting to destroy exist-
ing homesteads the act permits homesteads of increased
value to be acquired, and provides a more efficient means
for their admeasurement and protection. If, therefore, the
intent of the legislature is allowed to govern, there was
clearly no destruction of the existing homesteads. But
perhaps the better reason is that a homestead in this state
is in the nature of a vested interest, or a species of estate
which, when once acquired, is not destroyed by the mere
repeal of the statute authorizing its acquisition, but can
be relinquished only by the voluntary act of the person
holding it. On whichever of these grounds, however, the
rule may be said to rest, the rule itself has been so firmly
embodied in our decisions as not to be now overthrown.
On no other principle can the decisions of *Wiss v. Stewart,*
16 Wash. 376 (47 Pac. 736); *Anderson v. Stadlmann,*
*supra,* and *In re Feas' Estate,* 30 Wash. 51 (70 Pac. 270),
be sustained. In each of these cases the homestead there
in question was acquired under the laws existing prior to
the passage of the act of 1895, and was enforced after its
passage as against debts incurred prior thereto. While the
question here suggested was not discussed in either of the
cases, it was said in *Anderson v. Stadlmann* that the
"homestead was impressed upon [the land in controversy]
by the actual and continued residence thereon of the de-
fendant Stadlmann and family," implying that the home-
stead interest was something more than a mere privilege
conferred by the legislature as an act of grace which might
be taken away or destroyed by that body at its pleasure—
that it was, in fact, a vested interest.

The appellant, however, contends that, conceding that a homestead could have been selected out of these lands as against this debt, it must have been selected as prescribed by the law of 1895, and that this court so held in *Wiss v. Stewart* above cited. A remark in that case does support the contention, but this court has never allowed it to control in any subsequent case where the question was involved. On the contrary, the rule as applied has been directly the opposite. In the cases of *Anderson v. Stadlmann, supra,* and *In re Feas' Estate, supra,* the homesteads in question were selected prior to the act of 1895, and were held to survive that act notwithstanding no reselection had been made subsequent to its passage. Moreover, the contention itself is unsound in principle. If it be true that the act of 1895 superseded the prior laws in so far that no new right of homestead could be acquired under such prior laws after the passage of that act, then clearly the new act did something more than change the mode of selection under the prior laws; it took away the right of selection itself, leaving only existing homesteads, those which had been perfected by selection, to survive. It is also contended that the sale was valid notwithstanding the respondents may have had a homestead therein. The argument is that the homestead was of greater value than one thousand dollars, and could be lawfully sold for the excess, and that the decree, for that reason, instead of vacating the sale, should have directed that the value of the homestead be paid over to the respondents out of the purchase price of the property. Cases are cited from other jurisdictions where this contention is maintained, but, without stopping to review them specially, we think they are inapplicable under a statute like ours. Under our statute a sale of a homestead is not voidable merely, but abso-

lutely void, when had under a general execution. It can be sold at no time except for its excess of value, and this only after certain requirements provided by the statute are complied with. It seems unnecessary to argue that, when an involuntary sale of real property is required to be made in a particular manner, no other manner of sale will pass title.

We conclude, therefore, that the respondents acquired a homestead on these particular lots by selection prior to the act of 1895, which they have at all times since maintained; that, notwithstanding the value of the homestead is now greater than one thousand dollars, the excess cannot be reached by a general execution, but must be reached by a sale in the manner provided by the law in force at the time of its selection, and that the trial court correctly held the sale of these lots void.

7. The court found that the respondents had been damaged in the sum of five hundred dollars, and entered judgment in their favor for that sum. There is no justification in the record for this finding and judgment. Aside from the fact that the ordinary costs allowed by statute are all that can be recovered when claimed rights are sought to be enforced by the ordinary and usual processes of the law, there was absolutely no evidence of actual damages. Stating the elements constituting the damage, the respondent witness said: "I certainly am damaged by the continuance of this suit; I can make no disposition of the property, and the worry and discomfort is certainly continuing all the time." The suit he referred to was the action instituted by himself, which could hardly afford him any ground of complaint, and his general statement that he could make no disposition of the property, unaccompanied by a showing of an actual loss because of that

fact, formed no basis on which anything more than nominal damages could be assessed. As the trial court did not assess nominal damages none will be directed to be assessed by this court.

The judgment appealed from will be reversed, and the cause remanded to the lower court with instructions to enter a judgment vacating and setting aside the execution sale as to the lots in Boren's plat only, without the assessment of damages of any nature, further than the ordinary costs of the action. In all other respects the sale of the real property will be confirmed. The appellant will recover his costs in this court.

MOUNT, ANDERS, DUNBAR and HADLEY, JJ., concur.