[No. 26447.   Department Two.   September 14, 1937.]

MOZELLA E. DAVIES, *Plaintiff*, v. METROPOLITAN LIFE
INSURANCE COMPANY *et al.*, *Respondents*,
DOCIA B. DAVIES, *Appellant.*[1]

[1]Reported in 71 P. (2d) 552.

· *Geo. V. Ostroth* and *R. L. Edmiston* (*A. J. Menny,* of counsel), for appellant.

*Hamblen, Gilbert & Brooke,* for respondents.

Robinson, J.—In April, 1934, Metropolitan Life Insurance Company instituted an action to foreclose a mortgage on the south half of section thirty-two, township twenty-two north, range forty-four east of the Willamette Meridian. The mortgage was executed by Lewis Davies on May 1, 1929. Mozella E. Davies, a granddaughter of Lewis Davies, filed a complaint in intervention alleging paramount title. Docia B. Davies, the then wife of Lewis Davies, also filed a complaint in intervention alleging paramount title. Eventually, both intervening complaints were dismissed, that of Mozella E. Davies with prejudice, and that of Docia B. Davies without prejudice. Mozella E. Davies appealed, and the judgment of dismissal with prejudice was ordered modified to that of simple dismissal. *Metropolitan Life Ins. Co. v. Davies,* 190 Wash. 329, 67 P. (2d) 867.

Presumably in expectation of this result, Mozella E. Davies began an independent action against Metropolitan Life Insurance Company, even before the formal decree in the foreclosure suit was entered. In this action, she sought to enforce her alleged para-

mount rights in the land. Docia B. Davies filed an intervening cross-complaint in this action seeking to enforce her claims. Demurrers were interposed to both complaints and sustained as to each, and, in due course, each complaint was dismissed by a separate judgment. Both complainants appealed. The appeal of Mozella E. Davies was ruled upon by this court in the case of *Davies v. Metropolitan Life Ins. Co.*, 189 Wash. 138, 63 P. (2d) 529. The case at bar is the appeal of Docia B. Davies from the judgment dismissing her intervening complaint in that same action.

■ It is urged by respondents that some of the matters raised by appellant in her cross-complaint were adjudicated against her in the foreclosure suit. Having examined the record in that cause when it was here on appeal, we will go so far as to say that we suspect that this may be true. But that question is not before the court, for, since the defense of *res adjudicata* requires pleading and proof, it cannot be interposed by demurrer.

■ Furthermore, it is alleged in appellant's cross-complaint that she was not made a party to the foreclosure suit, and that her complaint in intervention therein was dismissed without prejudice. If this is true, and, in determining whether or not the demurrer in this cause was properly sustained, we are compelled to regard it as true, it is difficult to see how anything could have been finally adjudicated against the appellant in the foreclosure action.

It is alleged that Lewis Davies and his first wife settled on the southeast quarter of section thirty-two, township twenty-two north, range forty-four east of the Willamette Meridian, in 1882, and that Davies acquired a homestead right therein under the then existing law, which he never abandoned or relinquished until April 21, 1934; that the appellant married

Davies in 1910; that she did not consent to the making of the mortgage to the respondent insurance company in 1929; and it is contended that, as a matter of law, such mortgage is, therefore, wholly void, or, at least, subject to her alleged paramount right.

As to the southwest quarter of the section, it is alleged that appellant furnished one thousand dollars to Davies toward the purchase price thereof, with the understanding that, when the appellant and Davies should be married, it would become their community property; that the property was purchased, and the agreement fully executed by the subsequent marriage of the parties. Hence, it is said that the property was community property and not subject to mortgage without appellant's consent. It is further contended that the mortgagee was put on inquiry by the fact that appellant, as the wife of Davies, was living with him on the land at the time the mortgage was executed.

We think appellant's contentions with regard to the southwest quarter are obviously unsound. Appellant's allegations amount only to this: That Davies made a contract with her which he only partially performed. When he purchased the property before marriage and took title in his own name, it became, in law, his separate property. The marriage did not, and could not, convert it into community property. Some kind of conveyance from Davies to appellant was required to accomplish that. It is not alleged or pretended that any such conveyance was made prior to the execution of the mortgage. That such an advancement as is alleged by the appellant would not make the property subsequently purchased community property upon the taking place of the marriage, is held in *Morse v. Johnson,* 88 Wash. 57, 152 Pac. 677.

A much more difficult question is presented

with reference to the southeast quarter of section thirty-two. We have held, in the appeal taken by Mozella E. Davies in this case, that, since the first wife of Lewis Davies died before final proof was made, he took the property as his sole and separate property. It, therefore, had been his separate property for twenty years or more when he married this appellant, Docia B. Davies.

At first sight, Rem. Rev. Stat., § 6890 [P. C. § 1432], would seem to dispose of the question as to whether or not he could give a valid mortgage without the consent of the appellant.

"Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, and *he may* manage, lease, sell, convey, *encumber,* or devise, by will, *such property without the wife joining in such* management, alienation, or *encumbrance, as fully and to the same effect as though he were unmarried.*" (Italics ours.)

The appellant, however, calls attention to Rem. Rev. Stat., § 534 [P. C. § 7865]. This section is as follows:

"The homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both husband and wife."

Appellant says that, at the time the property was mortgaged, it was the homestead of a married person, Lewis Davies, and that she, his wife, did not execute or acknowledge the respondent's mortgage; and that, by virtue of § 534, it is void, or, at least, not binding as to her.

Since the demurrer admits that Davies settled on the land in 1882, it follows that, under the law then existing, it did become his homestead; and, since the demurrer further admits that he continued to occupy

it as a homestead at the time the mortgage was made in 1929, no abandonment having taken place, and further admits that the appellant was then his wife, it is apparent that a head-on collision results when these two sections of the statute are literally applied to the facts. Section 6890 has been the law since 1881, and, while § 534 was enacted in 1895, it merely replaced a similar provision of the code of 1881. Since the rules of law embodied in these two sections of the present code have existed side by side for more than fifty-five years, it would seem that § 534 must be regarded as providing an exception to the general provisions of § 6890.

The respondents contend that, since the property was the separate property of Davies, and had been for many years, when the appellant married him, this determines the matter; since, it is said, her marriage to Davies in 1910 could not possibly give her any right or estate in his separate property. But this does not solve the problem, for, even though the property was separate property at the time the mortgage was made, it was, nevertheless, in the language of § 534, "the homestead of a married person." Suppose A files a declaration of homestead covering his separate property in 1930, his wife dies, in 1932 he marries again, not having in the meantime filed an abandonment of the homestead in accordance with code § 535 [P. C. § 7866], could he lawfully encumber that homestead without the consent of his second wife, in view of the language of § 534? While we do not so decide, since we do not wish to pass upon a case which is not before us, we may say that we are strongly inclined to think that he could not.

Is the case at bar distinguishable from the case supposed? At first sight, there would seem to be no ground of distinction. The property in each case is

the separate property of the husband. There is, it is true, a striking difference in the lapse of time. The property in the case at bar had been Davies' separate property for more than twenty years before the appellant married him; but, notwithstanding the long lapse of time, since there was no abandonment, it was still "the homestead of a married person" at the time the mortgage was made and the wife did not join. We think, however, that the case at bar is distinguishable from the case supposed, for the following reasons:

■ Pursuant to the laws of 1881 and prior to the passage of chapter 64, Laws of 1895, p. 109, a homestead could be created by mere occupancy. After 1895, it could only be created by filing a declaration in the form provided by statute. The act of 1895 was complete in itself; so far so, that, although it contained no repealing clause, it must be regarded as having been intended to supersede, as far as possible, the previous statutes on the subject. In speaking of the 1895 statute, this court said, through Judge Gose, in *Hookway v. Thompson,* 56 Wash. 57, 105 Pac. 153:

"One of the most valuable aids in the interpretation of a remedial statute is to consider the old law, the mischief, and the remedy, and it is the business of the courts so to construe the law as to suppress the mischief and advance the remedy. 1 Cooley's Blackstone, *page 88. The mischief of the old law was that a homestead right could be impressed upon real estate without the record giving any notice of its existence. The remedy intended by the statute was that such right could only be created by the filing of a declaration of homestead, and that it could only be abandoned by the filing of a declaration of abandonment. *The evident purpose of the statute was that a homestead should exist in virtue of the record only.*" (Italics ours.)

It was impossible to fully accomplish that purpose on account of constitutional limitations. Those who,

like Davies, had acquired homesteads before the passage of the 1895 statute, could not be compelled to file declarations, because their rights were already vested. *Whitworth v. McKee,* 32 Wash. 83, 72 Pac. 1046. Hence, the homestead right of Davies existed all these years without any record. Could the appellant create an unrecorded homestead right in herself by the mere act of marrying Davies fifteen years after the enactment of the 1895 statute? We think that, to hold that she could and did, would not only violate the purpose and spirit of the 1895 statute and the general purpose of our recording acts, but would also be against public policy as tending to render titles uncertain. The act of 1895, as the court said in *Hookway v. Thompson, supra,* was passed to prevent the mischief resulting from the impressment of a homestead right upon real estate without the record giving any notice of its existence, and (quoting from that opinion):

"It is the business of the courts so to construe the law as to suppress the mischief and advance the remedy."

In the hypothetical case hereinbefore stated, the second wife could not possibly get a homestead right by the marriage unless there was actually of record at the time an unabandoned homestead declaration of the husband.

It is also alleged in the complaint that the appellant filed a homestead declaration on the southeast quarter of section thirty-two in 1934. But we think that this in no way gave her any rights as against the mortgagee. Its rights were acquired in 1929. *Hookway v. Thompson, supra.*

The judgment appealed from is affirmed.

STEINERT, C. J., and TOLMAN, J., concur.

HOLCOMB and BEALS, JJ., concur in the result.