[No. 6254.  Decided December 14, 1906.]

J. ALBERT CURRY, *Respondent*, v. RICHARD WILSON *et al*,
*Appellants*.

AUGUSTA S. WILSON, *an Insane Person, by Henry McLean,
Her Guardian Ad Litem, et al., Appellants,*
v. J. ALBERT CURRY, *Respondent*.[1]

LIMITATION OF ACTIONS—RELIEF FOR INSANE PERSON.  An action by
a guardian *ad litem* for relief from a void judgment against an insane ward is not barred, under Bal. Code, § 5156, until "within one
year from the removal of the disability," and hence not while the
ward is hopelessly insane.

INSANITY — HOMESTEAD OF INSANE WIFE — MORTGAGE — VALIDITY.
Prior to the act of 1895 (Bal. Code, § 5239), there was no statutory
authority for the mortgage of the homestead of an insane husband
or wife, and a mortgage by a husband, for himself and as guardian
for his insane wife, under authority of the probate court, was void,
2 Hill's Code, § 483, providing that no mortgage of the homestead
shall be valid unless joined in by the wife.

Appeal from a judgment of the superior court for Skagit
county, Joiner, J., entered February 26, 1906, upon findings
in favor of defendant, after a trial on the merits before the
court without a jury, in an action to set aside the foreclosure
of a mortgage and the execution proceedings thereon.  Reversed.

*Henry McLean* and *McLean & Wakefield,* for appellants.
*Million & Houser,* for respondent.

HADLEY, J.—This appeal involves the validity of a mortgage upon a homestead, which mortgage was executed by the
husband, and also by him as guardian for his insane wife.
Following is a history of the case:  About the year 1886,
Richard Wilson and his wife, Augusta S. Wilson, settled upon
government land in Skagit county, Washington.  The

[1]Reported in 87 Pac. 1065.

family consisted of the husband and wife and four minor children. On August 12, 1889, final proof as to settlement was made, and the family continued thereafter to reside upon the land as their home and homestead. On August 30, 1889, upon complaint of her·husband, Augusta S. Wilson was declared insane and was committed to the asylum at Steilacoom, Washington, where she remained until the time of the trial of this cause. At the time the wife was adjudged insane, the financial affairs of the husband and wife seem to have been in good condition. They were not indebted, and they owned, in addition to their homestead, a small amount of personal property. The husband and minor children continued to live upon the land, and occupied it as a homestead while the wife and mother was in the asylum. No guardian was appointed for the wife when she was declared to be insane, and such was the situation for the period of nearly three years. In 1892 the husband petitioned for his appointment as the wife's guardian. The record shows that, after the wife was adjudged insane, the husband contracted indebtedness which was somewhat heavy for one of his circumstances. He was being pressed by his creditors, among whom was his brother, to whom he was indebted in a considerable sum. This brother took the husband to see attorneys to consult them about some plan for securing his debt, and the application for the appointment of the husband as guardian immediately followed. The only purpose of the application was to effect his appointment as guardian so that he might petition the court for leave to mortgage the homestead for the purpose of paying his debts. The appointment of guardian was made, and this was followed by the guardian's petition for leave to mortgage the land. Leave was granted by an order of the court, and on June 6, 1892, the husband, in his own behalf and as guardian of his wife, executed to one Cloud a mortgage upon the land for $3,500. In 1898 Cloud prosecuted an action for the foreclosure of the mortgage, and such pro-

ceedings were had that decree of foreclosure was entered, and the land was afterwards sold by the sheriff to said Cloud under the order of sale. The sale was confirmed and, in February, 1899, by means of a writ of assistance, Cloud dispossessed the occupants of the land, who were of the family of the insane wife, and the premises passed into the possession of Cloud. Cloud conveyed the land to a trust company for the benefit of his heirs, and through this trust company possession has passed to one Curry.

In July, 1905, Curry brought an action for the purpose of quieting his title to the land, and Augusta S. Wilson, the aforesaid insane wife, was made a party to that action. Henry McLean was appointed her guardian *ad litem* to protect her interests. The order appointing the guardian *ad litem* was comprehensive in its terms, and authorized the institution of such suits or proceedings at law or in equity as may be necessary to protect the interests of said Augusta S. Wilson. The guardian *ad litem*, fearing that an attempt to vacate the aforesaid mortgage and foreclosure proceedings might be regarded as a collateral attack, if interposed as a defense in the Curry action, brought another action in the name of the incompetent, with her husband joining, for the purpose of vacating and setting aside the foreclosure proceedings and all of the proceedings leading up to the execution of the mortgage. Issues were joined in the two actions and on application of the guardian *ad litem*, the two causes were consolidated and, without objection were tried together. After a trial by the court without a jury, the court held that said Curry is the owner in fee simple, is in possession, and is entitled to the possession of the land in question. Decree was entered accordingly, and this appeal is from the judgment.

We shall first consider a point suggested by respondent concerning the statute of limitations. Respondent seems to concede that the issues presented by the consolidated actions

may be treated as one action in the nature of a common law action for review, within what is said in *Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099. It is pointed out that that action was brought within the time limited by statute. It is also pointed out that it was held in *Wilson v. Hubbard*, 39 Wash. 671, 82 Pac. 154, that failure to bring suit within one year from the removal of the disability of minority is fatal. Inasmuch as *Ball v. Clothier*, *supra*, is cited in the last-named case, respondent is at a loss to know whether this court intends to hold that the statute of limitations, Bal. Code, § 5156 (P. C. § 1036), applies to the common law action of review. If it does so intend, then respondent asks the question, when will the disability be removed in the case of one hopelessly insane? Whether the statute applies to such an action as this or not, we find it unnecessary to examine or discuss at this time. That question is of general importance, and its determination should be made in a case where it becomes necessary for the adjudication of litigants' rights. Such is not the case here. Even if the statute should be held to apply here, its language is so plain and comprehensive that we see no escape from the conclusion that this action is not barred. Relief in cases within the statute will not be granted unless proceedings are commenced "within one year from the removal of such disability." It seems manifest from the above that relief is not barred so long as the disability continues, which is admittedly true of Mrs. Wilson, the incompetent appellant here.

The appellants raise many questions concerning the procedure in the foreclosure of the mortgage, and it is contended that the foreclosure decree was void. First of all, however, it is contended that the mortgage itself was unauthorized and void in law, and if that contention shall prevail, it will be unnecessary to examine and discuss a number of other questions which are discussed in the briefs. We have seen that the property was occupied as a homestead by the incompe-

tent and her husband and family at the time she was declared to be insane and sent to the hospital. The family continued to so occupy it until the time the mortgage was made. At the time of the execution of the mortgage in 1892, the statute of this state provided as follows:

"Nothing herein contained shall be construed to prevent the owner of a homestead from voluntarily mortgaging the same. But no mortgage shall be valid against the wife of the mortgagor, unless she shall sign and acknowledge the same." 2 Hill's Code, § 483.

It will be seen from the above that no mortgage of the homestead was valid against the wife unless she joined in its execution. Admittedly the wife did not join in the execution of this mortgage in her own proper person. If she joined, she did so through her guardian as her representative. We must, therefore, determine whether the law then authorized the guardian of an insane spouse to mortgage the homestead. No statute upon the subject then in existence has been called to our attention, and we are not aware that there was any such. Apparently recognizing that without a statute expressly authorizing the execution of a mortgage upon the homestead of an insane husband or wife, the power to do so did not exist, the legislature of 1895 provided a way by which such mortgages could be made. The following statute was then passed:

"In case of a homestead, if either the husband or wife shall become hopelessly insane, upon application of the husband or wife not insane to the superior court of the county in which the homestead is situated, and upon due proof of such insanity, the court may make an order permitting the husband or wife not insane to sell and convey or mortgage such homestead." Bal. Code § 5239 (P. C. § 5481).

As a matter of legislative construction, we think it must be seen that the legislative body considered that no power to make such mortgages theretofore existed, and that the act

above mentioned was intended to create the power. That such was true seems to have received the sanction of members of the bar, but we are not aware that the courts of the state have passed upon the subject and particularly are we not advised of any decision of this court touching the question. Mr. Abbott, a member of the bar of this state, in his work on Probate Law, says on the statute of 1895:

"Previous to the adoption of this statute the interest of the incompetent spouse could not be conveyed, and much inconvenience and injury often resulted as a consequence." 1 Abbott, Probate Law, § 274.

The rights of an insane spouse in the homestead are so carefully guarded that, even when statutes specially authorize the conveyance of the homestead or a mortgage thereon, the provisions of the statute must be strictly pursued. California has a statute essentially the same as our statute of 1895, and in *Jones v. Flavella*, 126 Cal. 24, 58 Pac. 311, it was held that a petition for the sale of a homestead which did not state its value, was insufficient to confer jurisdiction upon the court to act, and that the sale made in pursuance of such petition was void. Before the passage of the said statute in California, the supreme court of that state had before it the same question that is now before this court. In the case of *Flege v. Garvey*, 47 Cal. 371, it was held that the homestead could be conveyed in the manner provided by statute alone, and that inasmuch as the statute made no provision for the sale in case of the lunacy, civil death, or imprisonment of either husband or wife, it followed that the guardian of the insane spouse had no power to sell the homestead, although ordered by the probate court to do so.

The constitution of Kansas provides that the homestead cannot be alienated without the joint consent of husband and wife, and a statute of Kansas follows the constitution in that regard. In *Locke v. Redmond*, 6 Kan. App. 76, 49 Pac. 670, it was held that such consent cannot be supplied by the

guardian of an insane spouse.   The court observed as follows:

"When the reason of the wife has been overthrown, when she has become so unfortunate as to be unable to protect herself, when by her efforts to keep the homestead and family together she has been overcome and her mind gives way, it is not an unwise provision of our constitution that she should be protected to the extent of the homestead.   That this homestead should be placed beyond the power of a guardian, and beyond the power of her husband, except with her consent, is wise and just.   The construction contended for by plaintiff in error would preserve the homestead to the wife and children during her sanity only.   This cannot be the spirit of our constitution.   We hold that it requires the joint consent of husband and wife to alienate the homestead, and such consent cannot be supplied by a guardian.   If, for the reason of insanity or any other reason, the wife's consent cannot be procured, there can be no conveyance.   This consent is prerequisite."

In principle our statute, 2 Hill's Code, § 483, *supra*, cannot be distinguished from the Kansas provision.   Our statute does not use the words "joint consent of husband and wife," but it is made very clear that the wife must consent, since otherwise she could not comply with the requirement that she must "sign and acknowledge" the mortgage.

The case of *Anderson v. Stadlmann*, 17 Wash. 433, 49 Pac. 1070, is, in essential particulars, similar to the one now before us.   In that case the land belonged to the husband, and the insane wife had the mere right of homestead in it. The husband executed a mortgage without the wife joining. She was afterwards adjudged insane and the husband was appointed her guardian.   It was held that the mortgage was void and could not be enforced against the homestead.   In the case at bar the property was community property, and the insane wife was an owner, having an interest in addition to the mere right of homestead.   Not having joined in the consent to the mortgage of the homestead either in fact or in law, the situation is in principle the same as in *Anderson*

*v. Stadlmann, supra,* with the existence of the additional fact that an attempt was made to mortgage her own community property without her consent and without her joinder.

That the homestead was impressed upon this land when the mortgage was made, there can be no doubt under what is said in *Anderson v. Stadlmann, supra.* The husband and wife occupied it as a homestead with their minor children until the enforced absence of the wife, and the husband and children were left in occupancy up to the time of the mortgage. The mere fact that the wife was involuntarily absent did not wrest from her her homestead rights for herself and family. For all the foregoing reasons, we think it must be held that the mortgage was without authority in law and was void. It follows that the foreclosure proceedings and the title founded upon the void mortgage must fail, and that appellants are entitled to have their title quieted as against the mortgage foreclosure proceedings and all conveyances thereunder.

Appellants also urge that this court shall enter a judgment for damages and finally dispose of the cause at this time. The record is such that it is evident the real issue tried below was the validity of the mortgage and foreclosure proceedings, leaving other questions to be more fully heard if the mortgage and foreclosure should be set aside. The cause should now be remanded for a more full hearing and consideration of other questions. While appellants are claiming damages, yet, as respondent suggests, there are other questions necessarily involved in the merits, such as improvements and taxes paid. We cannot, under the record, properly determine all the equities between the parties at this time. The judgment is therefore reversed, and the cause remanded for further proceedings as indicated by this opinion.

MOUNT, C. J., FULLERTON, RUDKIN, and CROW, JJ., concur.

DUNBAR and ROOT, JJ., took no part.