[No. 8362. Department One. March 1, 1910.]

J. ALBERT CURRY, *Appellant*, v. RICHARD WILSON *et al.*, *Respondents.*[1]

APPEAL—DECISION—LAW OF CASE—CONCLUSIVENESS. The facts and legal conclusions as found upon a former appeal are conclusive on the second appeal of a case.

SUBROGATION—INVALID MORTGAGE—WHAT LIENS INCLUDED. There can be no subrogation in favor of a mortgagee, as against the interests of an insane wife, by reason of equities existing at the time the husband executed the mortgage, where at the time the wife was adjudged insane there was no demand against her and no equitable lien on the property subsequently mortgaged.

QUIETING TITLE—RELIEF GRANTED—PERSONAL JUDGMENT—PLEADING. It is not error to refuse to enter a personal judgment against a defendant where the prayer of all the pleadings was for a decree quieting title to real property.

HUSBAND AND WIFE—COMMUNITY PROPERTY—PUBLIC LANDS—FEDERAL HOMESTEAD—STATES—SOVEREIGNTY. Under Rem. & Bal. Code, §§ 5915-5917, a homestead acquired from the Federal government by a married man during the lifetime of his wife is community property; and the state has the sovereign power to fix its character irrespective of Federal statutes.

DISMISSAL AND NONSUIT—VOLUNTARY—DISCRETION. It is not an abuse of discretion to refuse a voluntary dismissal of an action to quiet title after it had been consolidated with another suit in which defendants asked affirmative relief.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered October 7, 1908, upon findings in favor of the defendant, in an action to quiet title. Affirmed.

[1] Reported in 107 Pac. 367.

*Million & Houser*, for appellant.

*Henry A. McLean* and *D. G. Wakefield*, for respondents.

CHADWICK, J.—This case has been before this court—*Curry v. Wilson*, 45 Wash. 19, 87 Pac. 1065, to which reference may be made for the facts. The court there said: "We cannot under the record properly determine all the equities between the parties." The case was sent back for the ascertainment of such equitable claims as might exist in favor of Curry, the present appellant. The validity of the mortgage upon which appellant's title rests, as well as the subsequent foreclosure proceeding, was denied in the former case; and although appellant insists that he has been denied a constitutional right and that he has been, and is being, deprived of his property without due process of law, the validity of the mortgage and the mortgage foreclosure was fully considered by this court on the former appeal, and the claim of the appellant that he has been given no opportunity to be heard on these questions finds no support in the record. We feel bound by the facts as found by this court, as well as by its legal conclusions. Therefore, the only question for the trial court to determine was the items and amounts legally and equitably chargeable against the property.

Under the theory that he is being deprived of his property without due process of law, appellant seeks to open up the main question decided in the former opinion, and seems to make the further point in his brief that a part if not all of the amount represented by the original mortgage was an existing equity against the land at the time the mortgage was given, and should for that reason be allowed. If this were true, appellant would no doubt have a right of subrogation, but here again we are met by the fact that, at the time Mrs. Wilson was adjudged insane, there was no lawful demand against her or any equitable lien upon the property. Hence there can be no subrogation. To meet the issues within the rule of our former decision, appellant filed, in obedience to

an order of the trial court, a bill of particulars, in which the payment of taxes running over a period of ten years was claimed. It was also set up that:

"(2) *Plaintiff claims that the money which was advanced by J. A. Cloud to Richard Wilson was used by said Wilson for the purpose of paying off valid liens and obligations then existing against said real estate,* and for the purpose of keeping, maintaining and supporting the family of said Wilson, and that plaintiff is unable to give a more particular or specific bill of particulars of said moneys, for the reason that all of the facts and data are peculiarly within the knowledge of the defendants and especially of defendant Richard Wilson.

"(3) That the moneys loaned by said Cloud to said Richard Wilson as said guardian, were used for the purpose of clearing, fencing and otherwise improving said real estate, the facts of which are peculiarly within the knowledge of the defendants and especially of defendant Richard Wilson.

"(4) That plaintiff claims that a large amount of the money paid by said Cloud to said Richard Wilson was used for said Richard Wilson in the payment of debts and obligations incurred in the care, keeping and support of the minor children of said Richard Wilson and wife, and for which the property of said Richard Wilson and wife were liable";

all of which was stricken by the court except the part which we have italicized. We learn from the briefs that appellant offered to file an amended pleading, setting up the items inserted in the bill. This offer was denied by the court. The proffered pleading is not in the record. But, assuming, for the purposes of the argument, that it goes no further than the bill of particulars, we shall discuss the case as if it were before us.

The bill of particulars claimed that the money advanced by Cloud at the time the first mortgage was given was to pay off valid and subsisting liens against the property. This question was therefore before the court under the former decision, and testimony might have been taken on this issue, but it does not appear that any was offered at the trial. The conclusion is inevitably forced that the equities in this re-

gard are the same as those asserted at the former trial, and that the finding of this court that the estate of Augusta Wilson was in no way indebted at the time of her commitment to the asylum, was correct.

The trial court made the following findings:

"From the evidence adduced and from the stipulations of counsel made in open court, the court makes the following findings of fact: That all questions save and except those involving the validity of the mortgage and the foreclosure proceedings are now tried by this court, and that the amount of taxes paid by said J. Albert Curry and his grantors, and the amount of improvements and betterments and all claims of said J. Albert Curry and his grantors equal the amount of the rents and profits, and that all claims of said parties equalize each other, and that there is nothing due from either party to the other for or on account of the possession of the property involved herein. To which finding both parties consent and waive all exceptions.

"That the amount of damage sustained by said Richard Wilson and Augusta S. Wilson, by reason of the possession of said property by said J. Albert Curry and his grantors equals the amount of taxes, improvements and betterments paid and made by said J. Albert Curry and his grantors, and that there is nothing due from either party to the other."

We think these findings are sustained by the record, and dispose of this feature of the case.

The point is made that the court erred in refusing to enter a personal judgment against Richard Wilson. There is nothing in the record showing a right to such judgment. The prayer of all the appellant's pleadings is for a decree quieting his title, and the decree of the court is within the issues.

Appellant, in furtherance of his demands, raises a new question on this appeal. He says:

"The records show that Richard Wilson acquired title to the land in question by patent from the United States government by virtue of the preemption laws, and it is our contention that the title passed from the United States to Richard Wilson without any restrictions; in other words, that the

state has no authority to say what kind of title the husband gets from the government, and when the government gave a patent of the land to Richard Wilson, the state authorities have no power to say that this land belongs to other than the patentee. See, *McCune v. Essig*, 199 U. S. 382."

The case of *McCune v. Essig*, and all kindred cases, go no further than to hold that a surviving spouse, who complies with the Federal statute and makes proof under it, takes title in his or her own right; that the state cannot overcome the terms and intendments of the Federal law by enacting a rule of descent or of property inconsistent therewith. But here we have an entirely different question. The title passed in the lifetime of the husband and wife. The land was not acquired by gift, bequest, devise, or descent, and was therefore community property under the statute. Rem. & Bal. Code, §§ 5915-5917. It was so held in *Kromer v. Friday*, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671, and to the extent of this holding that decision has never been doubted or denied. See, *Cunningham v. Krutz*, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967. The right of the state to fix the character of property acquired by its citizens and the terms under which it shall be holden is a right of sovereignty, and a matter in which the Congress of the United States can have no concern. *Krieg v. Lewis*, 56 Wash. 196, 105 Pac. 483; *Delacey v. Commercial Trust Co.*, 51 Wash. 542, 99 Pac. 574; *Wilcox v. Jackson*, 13 Pet. 498.

Appellant also assigns as error the fact that the court denied the right to dismiss his action without prejudice. Reference to the former decision will show that the case was begun by appellant to quiet title. Another was begun by respondents to assert their rights in the property. These cases were consolidated. So long as any one was before the court asking affirmative relief, it was no abuse of discretion for the court to deny the motion.

Finding no error in the record the judgment is affirmed.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.