[No. 8585.   Department One.   September 6, 1910.]

MICHAEL ECKERT *et al., Appellants,* v. MYRA SCHMITT *et al.,*
*Respondents.*[1]

PUBLIC   LANDS—HOMESTEAD—HUSBAND   AND   WIFE—COMMUNITY
PROPERTY.  A homestead upon which final proof was made before
the death of the homesteader's wife, is community property, al-
though patent was issued to the husband after the wife's death.

DESCENT AND DISTRIBUTION—HUSBAND AND WIFE—COMMUNITY
PROPERTY.  Upon the death of a wife, one-half of the community
property descends to the children, who become tenants in common
with their father.

ESTOPPEL—PLEADING AND JUDGMENT—DIVORCE—EFFECT OF DECREE.
Where, in an action for a divorce by a second wife, she alleges and
the court finds that the husband owned an undivided one-half
interest in a homestead, the other half of which descended as
community property to the children of his first wife, and that the
husband had caused a mortgage thereon to be foreclosed and had
entered into a contract to purchase the equity of redemption in
fraud of the children and of plaintiff's rights, a decree of divorce
awarding to the wife all of the husband's interests in the property
was intended to transfer his half interest only, and estops the
wife from claiming the entire title, against the claims of the chil-
dren.

TENANTS IN COMMON—PURCHASE AT FORECLOSURE SALE—REDEMP-
TIONS.  There is a constructive redemption, which inures to the
benefit of cotenants, where a widower, occupying community prop-
erty as tenant in common with his children, allowed a mortgage
to be foreclosed and contracted to purchase the same from the
purchaser at the foreclosure sale.

DIVORCE—JUDGMENT—VACATION—LACHES.  An action to vacate a
decree of divorce upon the ground of perjury of the plaintiff must
fail for lack of diligence, where the defendant knew of the per-
jury at the time of the trial and did not commence the action for
nearly four years, claiming that he had but recently discovered the
evidence to prove the perjury.

DESCENT AND DISTRIBUTION—MINORS INHERITANCE FROM PARENT.
Upon the death of a minor, intestate and without issue, estate in-
herited from his mother descends to his sisters, under Rem. & Bal.
Code, § 1341, subd. 6.

[1]Reported in 110 Pac. 635.

TENANCY IN COMMON—ACCOUNTING—PARTITION. Where a divorced second wife has come into the possession of community real property of the first marriage belonging one-half to the children of the first wife, they are entitled to an accounting and partition.

Appeal from a judgment of the superior court for Douglas county, Grimshaw, J., entered July 10, 1909, dismissing on the pleadings an action for equitable relief. Reversed.

*Hurn & Curtiss* and *W. J. Canton,* for appellants.

*M. B. Malloy* and *W. A. Reneau,* for respondents.

Gose, J.—This is a suit in equity to establish the rights of the appellants in certain land, for an accounting for rents and profits, and for partition. A judgment of dismissal was entered upon the pleadings, on motion of the respondents. The appellants prosecute this appeal.

The admitted facts are that the appellant Michael Eckert, a married man, filed a homestead entry upon the land, and on April 18, 1892, made final proof of his compliance with the homestead law, and a receiver's receipt was issued to him. On October 26 following, the land was granted to him by the United States, by its letters patent. The wife died intestate on August 3, 1892, about four months after final proof was made and about two months before the patent was issued, leaving as issue of her husband and herself Anna Eckert of the age of eight years, Rosa Eckert of the age of six years, Charles Eckert of the age of three years, and Lena Eckert of the age of one year.

After making final proof, Michael Eckert and his wife mortgaged the land. On the 29th day of October, 1892, Michael Eckert was appointed guardian of his children, and on the 5th day of September, 1893, he was appointed administrator of the estate of his wife. On April 16, 1894, Michael Eckert was married to the respondent Myra Schmitt. On February 2, 1901, the land was sold at sheriff's sale to the mortgagee, upon an order of sale issued upon a decree foreclosing the mortgage, and on February 21, 1902, the land

was conveyed to the purchaser by a sheriff's deed.  On January 4, 1902, Michael Eckert entered into a contract with the purchaser, whereby it agreed to convey the land to him upon his compliance with the terms of the contract.  On May 3, 1902, in a suit wherein his then wife, the respondent Myra Schmitt, was the plaintiff and Michael Eckert was the defendant, a decree was entered divorcing them and dividing certain property between them.  Charles Eckert died unmarried, intestate, and without issue, in March, 1904, he then being of the age of thirteen years.  On February 12, 1904, the land was conveyed to respondent Myra Schmitt, then Myra Eckert, by the purchaser at the mortgage sale. She has since married her co-respondent Albert Schmitt.  The respondent Myra Schmitt has had the rents and profits of the property since the entry of the divorce decree, and has rendered no account to the appellants.  The complaint alleges that the respondent Myra Schmitt, without any consideration, procured the appellant Anna Eckert Buzzard to execute to her a deed to whatever interest the latter had in the land.  Issue is joined on this averment.  The entire record in the divorce proceeding is made a part of the pleadings.

The appellants contend, (1) that the land was the community property of Michael Eckert and his first wife; (2) that the contract of purchase, which was made before the period of redemption expired, inured to the benefit of the children, who were cotenants of their father; (3) that the decree of divorce and the division of the property was procured through the fraud of the respondent Myra Schmitt; and (4) that the appellants and the respondent Rosa Eckert own the property as an entirety.

We think the first contention must be upheld.  Michael Eckert having made final proof of full compliance with the provisions of the homestead law before the death of his wife, the land was community property, and upon the death of the wife, intestate, the minor children became, by operation of law, tenants in common with their father.  In *Ahern v.*

*Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, it was held that, where the title is earned but final proof made after the death of one spouse, the property belongs to the community; that a title earned is equivalent in law to a title vested, and that a homestead title is acquired by purchase and not by gift. In the late case of *Krieg v. Lewis*, 56 Wash. 196, 105 Pac. 483, we held that, where the patent issues before the death of the wife, the land is community property.

The respondents contend that, under the rule announced in *Hall v. Hall*, 41 Wash. 186, 83 Pac. 108, 111 Am. St. 1016; *Cunningham v. Krutz*, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967; *McCune v. Essig*, 122 Fed. 588; *Id.*, 199 U. S. 382, the land was the separate property of the husband, and that *Ahern v. Ahern* has been overruled. We do not think these cases qualify the principle we have stated. In the *Hall* case, Hall entered the land as a homestead on August 30, 1898, made final proof on August 8, 1899, and received his patent February 9, 1900. Between March 24, 1889, and March 4, 1896, he and Anna M. Hall were husband and wife. On the latter date the wife was granted a divorce. Prior to the decree of divorce, the land was unsurveyed public land of the United States. On the 30th day of August, 1899, John F. Hall remarried, and died in 1903, having before his death conveyed all his interest in the land by deed to his second wife. Upon the facts stated, it was held that the divorced wife had no interest in the property, and that the only interest her husband had in the property at the time of the divorce was the right of occupancy and a preference right to enter the land and acquire title thereto after the same was surveyed and open to settlement.

In the *Cunningham* case the wife died within three years after the homestead entry. Later the husband commuted, made final proof and cash payment, and received a patent. Upon these facts the court said that the husband took the title as his separate property. In *McCune v. Essig* the husband died within a year after making his homestead filing,

and the wife, upon proof of full compliance with the homestead law, received a patent in her own name. It was ruled by both courts that the widow was a donee in her own right, and that the homestead was her separate property. The supreme court said that, the husband having died before the terms of the statute had been complied with, so as to entitle him to a grant of the land from the government, the statute "which gives him a right, gives her a right. She is as much a beneficiary of the statute as he." "Whilst nothing but the patent passes a perfect and a consummate title" (*Wilcox v. Jackson*, 13 Pet. 498), the revised statutes of the United States, §§ 2291-2, direct that the entryman, upon proof of residence upon the property for a period of five years after the date of the entry, and a compliance with the statute in other respects, "shall be entitled to a patent."

"Where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued." *Simmons v. Wagner*, 101 U. S. 260.

See, also, *Barney v. Dolph*, 97 U. S. 652.

We think the principle deducible from these cases is that, after proof has been made of full compliance with the statute, the state law fixes the status of the property. It is true that the legal title does not pass from the government until the issuance of the patent, but, as was said in *Barney v. Dolph*, *supra*, the issuance of the patent is a mere ministerial act. The rule announced in the *Ahern* case may be somewhat modified by the *Hall*, *Cunningham*, and *McCune* cases, but as applied to the facts in the case at bar, it is still controlling.

A proper understanding of the other contentions made by the appellants requires a statement of the record in the divorce case. The respondent Myra Schmitt, in her complaint in the divorce proceeding, alleged that the property was the community property of Michael Eckert and his first wife at the time of her death; "that at the time of the marriage of plaintiff and defendant, the defendant owned an undivided

one-half interest in said land, meaning the land in contro-
versy, subject to said mortgage, and the other undivided one-
half interest in and to said real estate belonged to said minor
children . . . as heirs at law of their mother, said Mary
Ann Eckert, who died intestate"; that with the intent and
purpose of defrauding the children and herself out of said
land, and contrary to his duty as guardian of his children,
and to defeat a redemption, Michael Eckert caused the mort-
gage to be foreclosed and the land to be sold, and took a
secret contract in his own name for the purchase of the land.

Among other facts in the divorce action, the court found
"that said defendant has an undivided interest in and to said
land, and in and to said land contract, and in and to said
personal property, and plaintiff and defendant have a com-
munity interest in said land." The court decreed to the
plaintiff in the divorce action all the right, title, and interest
of the defendant Michael Eckert in the property. Reading
the record in the divorce proceeding as an entirety for the
purpose of ascertaining the intention of the court, it is
obvious that the court only intended to, and did only, give
the plaintiff an undivided one-half interest in the property.
Moreover, she is estopped to dispute the record which she
made. She cannot profit by her own statement of facts in
the one case, and then be heard to take an inconsistent posi-
tion in another case. *Davis v. Wakelee*, 156 U. S. 680;
*Potvin v. Denny Hotel Co.*, 37 Wash. 323, 79 Pac. 940;
*Womack v. Womack*, 73 Ark. 281, 83 S. W. 937, 1136;
*Galt v. Provan*, 131 Iowa 277, 108 N. W. 760; *Territory v.
Cooper*, 11 Okl. 699, 69 Pac. 813; *Colpe v. Lindblom*, 56
Wash. 106, 106 Pac. 634. Michael Eckert appeared and
defended in the divorce action. The record imports equal
verity as to him. The contract of purchase was made within
the redemption period, and between him and his cotenants,
who were also his wards, it will be treated as a redemption.
Indeed, it may be said that Michael Eckert acquiesces in this
view.

The appellants' plea, that the divorce was granted upon perjured testimony induced by the conduct of the respondent Myra Schmitt, does not state a cause for relief. The decree was granted in May, 1902, and this action was commenced in January, 1908. The appellant Michael Eckert admits that he knew that perjury was committed at the time, but asserts that the evidence to establish it was discovered only a short time before the commencement of the action. Assuming, without deciding, that in proper cases a judgment entered upon perjured testimony may be vacated, there is such an obvious want of diligence in the case as to preclude a vacation or modification upon that ground. *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849.

Upon the death of Charles Eckert, a minor, intestate and without issue, the estate which he inherited from his mother descended to his sisters. *In re Fort's Estate*, 14 Wash. 10, 44 Pac. 104; Rem. & Bal. Code, § 1341, subd. 6.

An issue is joined as to the rental value of the property, the validity of the Anna Eckert Buzzard deed, the payment of the purchase price of the land, and the payment of the taxes. Michael Eckert owns no interest in the property. His interest passed to the respondent Myra Schmitt by the decree of divorce. His children inherited and own an undivided one-half interest in the property, less the interest of Anna Eckert Buzzard, if her conveyance is valid. The appellants are entitled to an accounting and partition.

Reversed, and remanded for further proceedings in harmony with this opinion.

RUDKIN, C. J., and FULLERTON, J., concur.

CHADWICK, J. (concurring)—The decision of the majority is correct, but a part of the argument is wrong and I fear may be confusing to the bar. The reference to the case of *Ahern v. Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, and the attempt to distinguish its facts from the later cases decided by this court and the case of *McCune v. Essig*,

199 U. S. 382, proceeds upon a misconception of the law. It is true that it was held in the *Ahern* case that, if the spouses had lived more than six years upon a government homestead and the wife died, the property became community property under the rule that a title earned is equivalent to a title vested. The application of this equitable principle to the facts in that case is what made the judgment of this court wrong. As was most clearly pointed out in the *McCune-Essig* case, and the later decisions of this court, the equitable principle applying between men in the ordinary affairs of life, or in the absence of a controlling statute, could have no application, for the obvious reason that the Federal statute fixed the title in the one who made the proof under it without reference to the time of residence. In *Bernier v. Bernier*, 147 U. S. 242, it was said that the object of sections 2291 and 2292, Federal Statutes, was "to provide a method of completing the homestead claim and obtaining patent therefor, and not to establish a line of descent or rules of distribution of the deceased entryman's estate." Thus, the argument that an equity would arise in the heirs of a deceased spouse, because the ancestor had lived upon the land for the statutory term and might have made proof, is misleading, and may hold out the hope to some that we are prepared to follow the *Ahern* case under a similar state of facts; whereas, that case has, in my judgment, been overruled by the later decisions of this court. But, whether it has been expressly overruled or not, it could make no difference, for the question is a Federal question, and we would be bound by the Federal statutes and decisions if called upon to meet a like case. Under the Federal statutes the time of residence cannot be made material. Title is vested by the patent in the beneficiary designated by the statute. The same argument that is made by the writer of the majority opinion was met by the supreme court of the United States in the *McCune-Essig* case, the court saying:

"But, it is contended, that a beneficial interest having been created by the state law in McCune when the title

passed out of the United States by the patent, it 'instantly dropped back in time to the inception or initiation of the equitable right of William McCune, and that the laws of the state intercepted and prevented the widow from having a complete title without first complying with the probate laws of the state.' This, however, is but another way of asserting the law of the state against the law of the United States, and imposing a limitation upon the title of the widow which section 2291 of the Revised Statutes does not impose. It may be that appellant's contention has support in some expressions in the state decisions. If, however, they may be construed as going to the extent contended for, we are unable to accept them as controlling."

The time when the laws of the state can affect the title to property acquired under the Federal laws has been fixed ever since the opinion of the court was announced in *Wilcox v. McConnel*, 13 Pet. 498, 516, wherein it was held:

"We hold the true principle to be this, that whenever the question in any court, state or Federal, is, whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to state legislation; so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

In other words, where the title vests according to the Federal statute, the state cannot by any act deprive the donee or patentee of his rights of property, nor can any person assert an equity that would defeat the intent of the Federal law. This case has been frequently followed. See: *Kreig v. Lewis*, 56 Wash. 196, 105 Pac. 483; *De Lacey v. Commercial Trust Co.*, 51 Wash. 542, 99 Pac. 574; *Curry v. Wilson*, 57 Wash. 509, 107 Pac. 367.

I concur in the result.

MORRIS, J., concurs with CHADWICK, J.