[No. 10824. Department Two. July 1, 1913.]

JOHN TEYNOR et al., *Respondents*, v. CHLOE HEIBLE et al.,
*Appellants*.[1]

HUSBAND AND WIFE — COMMUNITY PROPERTY — PUBLIC LANDS —
HOMESTEAD ENTRY—TITLE. Where a single man made homestead
entry upon public lands, and subsequently married and thereafter
patent issued to him, the land became his separate property.

EXECUTORS AND ADMINISTRATORS—FINAL DISTRIBUTION—NOTICE—
SUFFICIENCY—JURISDICTION. Under Rem. & Bal. Code, §§ 1589, 1499,
and 1500, requiring the time for final settlement of an estate to be
fixed for not less than four or more than eight weeks from the time
of making the order, and notice to be given by personal service or
by publication for at least four successive weeks, a final distribution
is without jurisdiction, and is subject to collateral attack, where only
21 days elapsed between the date of the order and the time of the
hearing, and less than three weeks elapsed between the first pub-
lication of notice and the date of the hearing.

JUDGMENTS—CONCLUSIVENESS—COLLATERAL ATTACK—RECITALS. A
recital in a judgment of final distribution that the court finds from
"affidavits on file" that due service of notice was made, does not
raise the presumption, on collateral attack, of a valid personal serv-
ice, where the only affidavits on file show a defective publication;
since the only affidavits on file negative personal service and affirm-
atively show want of jurisdiction.

Appeal from a judgment of the superior court for Adams
county, Holcomb, J., entered March 15, 1912, upon findings
in favor of the plaintiffs, in an action for partition. Affirmed.

*Lovell & Davis*, for appellants.

*Adams & Naef*, for respondents.

FULLERTON, J.—This action was brought by the respond-
ents against the appellants for the partition of certain real
property. The land in question was acquired from the Uni-
ted States under the homestead laws by one Peter Teynor,
who died without lineal heirs. The respondents are his father
and mother. The appellant, Chloe Heible, was his wife at

[1]Reported in 133 Pac. 1.

the time of his death. The other appellants claim an interest in the land through mortgages or contracts to convey executed by Chloe Heible. Peter Teynor entered the land in the year 1901. He was then a single man, never having theretofore been married. On January 1, 1903, he intermarried with the appellant Chloe Heible. He made final proof under the homestead laws on September 12, 1906, and thereafter a patent to the land from the United States was duly issued to him. He died intestate on October 30, 1906, without having parted with the title acquired by him under the homestead patent.

Letters of administration on Peter Teynor's estate were issued out of the superior court of the county in which the land is situated to John A. Willis, the father of the appellant Chloe Heible. The administrator performed the duties of his trust, and on October 26, 1908, filed his final account with the estate, together with a petition asking for the distribution of the property thereof, praying that his account be settled and allowed, and that the estate be distributed to those lawfully entitled thereto. The court, sitting in probate, entertained the petition, and made an order, dated as of the date on which the petition was filed, appointing November 16, 1908, as the time for hearing the petition; further ordering that the clerk of the court give notice thereof by causing notices to be posted in three of the most public places in the county in which the land is situated, "at least two weeks before said day of settlement and hearing of petition, and publish notice thereof, according to law, for two weeks before said day of settlement and hearing upon the petition," in a certain designated newspaper. Proof by affidavit was made of the posting and publishing by the clerk, and on the day fixed for the hearing the court entered a decree in which it approved the final account and distributed the estate. That part of the decree relating to the proof of service of notice of the time of the hearing recited that it appeared "to the court by affidavits on file herein that due

and regular notice as required by law, and the order of this court, was given of the hearing hereof." The order distributed the whole of the estate to the appellant Chloe Heible as the sole heir at law of Peter Teynor, deceased. In making the order of distribution, the probate court proceeded on the theory that the real property was, when acquired from the United States, the community property of Peter Teynor and Chloe Teynor, his wife, and that it descended on the death of Peter Teynor, under the statutes of the state governing the descent and distribution of community real property, to the wife, since the entryman died without issue.

The court in the case now before us, on the same state of facts, held the property to be the separate property of Peter Teynor, and to have descended on his death, under the statutes governing the distribution and descent of separate property, one-half to the father and mother of the deceased, and one-half to his wife, Chloe Teynor; holding further that the decree of distribution entered in the administration proceedings was void because entered without sufficient notice. The first question suggested by the record relates, therefore, to the nature of the title acquired by Peter Teynor in virtue of his homestead entry. Did the land become, on his acquisition of the title thereto, his separate property, or did it become the community property of himself and his then wife, the appellant in this proceeding?

On the question, our own cases are out of harmony. Indeed, they seem incapable of being reconciled, whether considered with relation to the facts upon which they are founded or with relation to the reasons by which they are thought to be sustained. The cases in which the question of the nature of the title acquired by a homestead entry from the United States is considered are the following: *Philbrick v. Andrews*, 8 Wash. 7, 35 Pac. 358; *Bolton v. La Camas Water Power Co.*, 10 Wash. 246, 38 Pac. 1043; *Kromer v. Friday*, 10 Wash. 621, 39 Pac. 229, 33 L. R. A. 671; *Forker v. Henry*, 21 Wash. 235, 57 Pac. 811; *In re Feas' Estate*, 30 Wash.

51, 70 Pac. 270; *Ahern v. Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912; *Towner v. Rodegeb*, 33 Wash. 153, 74 Pac. 50, 99 Am. St. 936; *James v. James*, 35 Wash. 655, 77 Pac. 1082; *Cox v. Tompkinson*, 39 Wash. 70, 80 Pac. 1005; *Hall v. Hall*, 41 Wash. 186, 83 Pac. 108, 111 Am. St. 1016; *Cunningham v. Krutz*, 41 Wash. 190, 83 Pac. 109, 7 L. R. A. (N. S.) 967; *Curry v. Wilson*, 45 Wash. 19, 87 Pac. 1065; *Rogers v. Minneapolis Threshing Machine Co.*, 48 Wash. 19, 92 Pac. 774, 95 Pac. 1014; *Delacey v. Commercial Trust Co.*, 51 Wash. 542, 99 Pac. 574, 130 Am. St. 1112; *Krieg v. Lewis*, 56 Wash. 196, 105 Pac. 483, 26 L. R. A. (N. S.) 1117; *Curry v. Wilson*, 57 Wash. 509, 107 Pac. 367; *Eckert v. Schmitt*, 60 Wash. 23, 110 Pac. 635.

Grouping the cases according to their facts, and the decision of the court upon the facts, in the first group can be placed the cases of *Philbrick v. Andrews* and *In re Feas' Estate*. In these cases all that appeared in the record was that the land was occupied by the entryman and his wife at the time final proof was made and patent issued, and it was assumed, as if not subject to controversy, that the property was the community property of the husband and wife.

In the second group can be placed *Forker v. Henry*, and *Rogers v. Minneapolis Threshing Machine Co.* In the first case, the land was settled upon and entered as a homestead by a single woman, who lived thereon for some four years and then married. Thereafter, while the marriage relation continued, she made final proof and was granted a patent. In *Rogers v. Minneapolis Threshing Machine Co.*, the land was settled upon and entered by a married man living with his wife. Some two years later, while living on the land, the wife died leaving issue. A year and a half thereafter, the entryman married a second time, and two years after the second marriage, made final proofs and received a patent. In each of the cases the land was held to be the separate property of the entryman.

In the third group can be placed *Kromer v. Friday, Ahern v. Ahern, James v. James,* and *Cox v. Tompkinson.* In these cases, the wife resided upon the land with her husband at the time of its entry, and continued to reside thereon until her death, which occurred in each instance prior to making final proof and the receipt of patent, although occurring after the full period of residence required by the Federal statute as preliminary to making final proof had expired. The property acquired was held to be community property.

In the fourth group can be placed *Bolton v. La Camas Water Power Co.,* and *Cunningham v. Krutz.* In the first of these cases, the wife resided on the land from the time of its entry by the husband until the residence period expired, but died before the making of final proof and the issuance of patent. In the second case the entry was made by a married man living with his wife. The wife died some three years later, after a continuous residence on the land subsequent to the entry. A few months later, the husband commuted the entry and received a patent for the land. The property was held in each case to be the separate property of the husband.

In the fifth group can be placed *Curry v. Wilson,* 45 Wash. 19, 87 Pac. 1065; *Curry v. Wilson,* 57 Wash. 509, 107 Pac. 367; *Krieg v. Lewis,* and *Eckert v. Schmitt.* In these cases, the wife resided with the husband on the homestead from the time of the original entry until after the making of final proof, and in two of them until after patent was issued. The land acquired was held to be the community property of the spouses.

In a sixth group can be placed the cases of *Towner v. Rodegeb, Hall v. Hall,* and *Delacey v. Commercial Trust Co.* In the first case, the land was settled upon prior to the extension of the public surveys thereover, and prior to the time the land was subject to entry under the public land laws. The settler died before the land became so subject to entry, and it was held that he had no estate of inheritance therein, or estate of any kind that was cognizable in proceedings in-

stituted on his estate in the probate court.    In *Hall v. Hall*, the parties thereto, while husband and wife, settled upon unsurveyed lands of the United States and lived thereon together as husband and wife for a period of more than five years.    Prior to the time the lands were open to entry, they were divorced, and subsequent to the divorce, the lands became subject to entry, and the husband entered the same as a homestead, and subsequent thereto made final proofs and received a patent.    It was held that his divorced wife had no interest in the property.    In *Delacey v. Commèrcial Trust Co.*, it was held that a mere settlement on government land by a husband and wife conferred no community interest in the land.

The arguments thought to sustain these several conclusions we shall not set forth.    It is manifest, however, that no reasoning based upon principle can reconcile the first with the second group, or the third with the fourth.    It is the opinion of the court now that the property in each of these groups, if nothing more appeared in the record than is shown in the opinion, should have been held to be the separate property of the entryman.    In other words, the rule should be that in all cases where the marital relation does not exist at the time of the original settlement and entry, and continue until final proof is made, the property should be held to be the separate property of the spouse who finally acquires the patent to the land.    The folly of any other rule is illustrated by the case of *Rogers v. Minneapolis Threshing Machine Co.*, 48 Wash. 19, 92 Pac. 774, 95 Pac. 1014.    This case we have placed in the second group, but it belongs under its facts in the fourth group also.    In that case, it will be remembered that the entryman was married at the time he made entry on the land; that his then wife died leaving issue some two years later, after a continuous residence thereon; that, about a year later, the entryman married a second time, resided with his second wife on the property for some two years more, and made final proof and received a patent.    If a community in-

terest is impressed on the land by the fact of marriage at the time of its entry, as is held in the fourth group of cases, and if a community interest is also impressed by the fact of marriage at the time of the making of final proof, and the issuance of the patent, as is held in the first group, then this land was impressed with the interests of two distinct communities, the one in favor of the issue of the first wife, and the other in favor of the second wife. A rule that leads to such incongruous results is certainly not to be commended.

The facts of the case at bar bring it within the cases found in both the first and second group of cases as we have listed them, and since we conclude that the decisions in respect to the first group rather than in the second were wrong in principle, we hold the property in question here to have been the separate property of the husband on its acquisition from the government.

The second question suggested by the record is the validity of the decree of distribution entered in the probate proceedings. This present action is a collateral attack upon the decree, and it is conceded that, unless the record shows affirmatively a want of jurisdiction, it is conclusive upon all the world. We think the record does show affirmatively a want of jurisdiction. The statute relating to decrees of distribution in probate proceedings provides that such decrees may be made on the application of the executor or administrator, or any one interested in the estate, but only after "notice has been given in the manner required in regard to an application for the sale of land by an executor or administrator." Rem. & Bal. Code, § 1589 (P. C. 409 § 595). The statute relating to the sale of real estate by an executor or administrator provides that the court, after the petition for the sale is filed, shall "make an order directing all persons interested to appear at a time and place specified, not less than four or more than eight weeks from the time of making such order," and that a "copy of such order to show cause shall be personally served on all persons interested in the estate at least

ten days before the time appointed for the hearing of the petition, or shall be published at least four successive weeks in such newspaper as the court shall order." Id. §§ 1499, 1500 (P. C. 409 §§ 395, 397). From an examination of the dates before set out, it will be observed that, in this instance, the time elapsing between the date of the order to show cause and the time fixed for the hearing was only twenty-one days, and that less than three weeks elapsed between the first publication of the order and the time fixed for the hearing. The notice actually shown in the record, therefore, was clearly insufficient to give the court jurisdiction to make the order.

But the appellant says that, since this action is a collateral attack on the decree, all intendments are in favor of its validity, and since personal service on the persons interested ten days prior to the time fixed for the hearing is made equivalent to published notice, the court will presume, in the absence of a showing to the contrary, that such a service was made. But, as we say, we think the record does show on its face to the contrary. The recital in the judgment is that the court finds from the "affidavits on file" that due service was made. As the only affidavits on file, or that were put on file, show service by publication only, the idea of any other service is clearly negatived. "If a want of jurisdiction affirmatively appears on the face of the record, the judgment will be held to be void upon collateral attack as well as direct attack." *Wick v. Rea*, 54 Wash. 424, 103 Pac. 462.

The judgment appealed from will stand affirmed.

Ellis, Morris, and Main, JJ., concur.