[No. 20996. *En Banc.* September 14, 1928.]

JAMES H. SIMMONS *et al., Appellants,* v. DANIEL W. SIMMONS *et al., Respondents.*[1]

*Geo. H. Mullins,* for appellants.

*Parker & Parker* and *Williamson & LaBerge,* for respondents.

FRENCH, J.—James T. Simmons made application for homestead entry of certain government lands in the Yakima Valley, about September 1, 1870. At that time, he was a married man and, with his wife and children, resided on the homestead entry. The wife died in August, 1872, leaving as survivors her husband with their four children. In 1873, James T. Simmons

[1]Reported in 270 Pac. 309.

married a Mrs. Pyburn, a widow having six children. They, with the children of both families, continued to reside upon the land. One child was born, the issue of this marriage. A final certificate was issued to the land in August, 1877, and thereafter patent issued to James T. Simmons in January, 1878. The family home continued on the land until August, 1907, when the second Mrs. Simmons died, leaving a will nominating her son, George S. Pyburn, as executor.

All of the Pyburn children desired to receive what they contended to be their share of the mother's estate. A meeting was held at which all the Pyburn children, together with James T. Simmons and some of his children, were present, and matters were discussed. Legal counsel was sought, and the parties were advised (erroneously so under our later decisions: *Teynor v. Heible,* 74 Wash. 222, 133 Pac. 1, 46 L. R. A. (N. S.) 1033) that the land in question which had been homesteaded by James T. Simmons was community property of James T. Simmons and his second wife.

At that time, James T. Simmons was a man well advanced in years, and desired that his son, Daniel W. Simmons handle all his business transactions for him. He wished, also, to provide for his future care and maintenance; and with that idea in view, and believing that the real property was community property, having been so advised by the attorney representing all parties, executed a deed to Daniel W. Simmons, the descriptive part of the deed reading as follows:

"An undivided one-half interest, being all my right, title and interest in and to, etc."

thereafter describing all the property involved in this action; authorized his son Daniel W. Simmons to represent him in all matters; and the record in the case shows conclusively that, at the time of the execution

of the deed, James T. Simmons believed he was conveying to his son, Daniel W. Simmons, and that it was his intention to convey to his son, his entire interest in the property, the consideration therefor being that his son, Daniel W. Simmons, would care for and provide for him during his remaining years. This agreement seems to have been faithfully carried out by Daniel W. Simmons, the record indicating that, at all times during the remaining years of James T. Simmons' life, he received from his son that careful consideration and care which a dutiful son would give to his father under such circumstances.

Thereafter an agreement was entered into by Daniel W. Simmons and the Pyburn heirs wherein it was agreed that the will of the second Mrs. Simmons should be admitted to probate; that the property in question should be administered as community property, and providing generally how the property should be distributed, one-half going to Daniel W. Simmons, and the balance to various children. This agreement was in writing, prepared by an attorney, properly witnessed, and seems to have been strictly in accord with the oral understanding at the meeting at which all of the parties were represented immediately after the death of the second Mrs. Simmons. The written agreement was filed in court, and in accordance with the terms of the will, George S. Pyburn was appointed executor. Thereafter and in 1907 certain deeds were prepared and mutually executed and exchanged by all of the Pyburn heirs and Daniel W. Simmons, awarding the property strictly in accordance with the oral agreement, and on the assumption that the parties thereto owned the full and complete title, and from time to time various parties came into possession of various tracts of ground, some of which have been transferred, and all of which have been held in the

possession of those now holding them or their predecessors in interest, for more than ten years prior to the commencement of this action.

Thereafter, and on April 1, 1916, the administration of the estate of the second Mrs. Simmons was closed, and an order approving the final account and report of the executor, distributing the property, and discharging the executor was filed, which order is full, comprehensive and complete in every particular. This order distributes the property in accordance with the deeds which had been executed in 1907; recites the inventory and appraisement, and community interest of the deceased in the real property in question.

Thereafter, on June 27, 1917, James T. Simmons died, and this suit was commenced in the latter part of October, 1923, by appellants as heirs at law of their father, James T. Simmons, for the recovery of certain of the real estate. From a judgment of dismissal, this appeal follows.

At the outset, the appellants are confronted with the bar of the statute of limitations. The record clearly and conclusively shows that James T. Simmons knew that this property was being handled, deeded and conveyed as the community property of himself and his second wife in the year 1907. That he acquiesced in, consented to, and ratified and approved the acts of these various parties in so dealing with this property cannot be questioned or rebutted. That he believed that he had, and intended to, convey all of his interest in this property is made certain by the wording of his deed thereto reading as it does: "An undivided one-half interest, being all my right, title and interest in and to, etc", as well as by the oral testimony.

The record conclusively shows that this property has been in the open, notorious and adverse possession of the various respondents who are now claiming the

same, or their predecessors in interest under claim of title and full ownership thereof for more than ten years prior to the commencement of this action, and that their title to and occupancy of the land was acquiesced in by James T. Simmons for many years prior to his death.

Objection is made by appellants to certain irregularities in the decree of distribution, and the notice of the time of hearing thereon in the estate of the second Mrs. Simmons. The lower court, in a carefully considered opinion, has overruled all of appellants' objections thereto, holding that they had failed to prove lack of notice, and finding that the property had been duly administered as community property, and had been, on due notice, distributed in 1916 as community property to those entitled thereto. The administration of this estate covered a period of about nine years, and the ancestor under whom these appellants now claim title had actual knowledge of, and acquiesced in, the administration and distribution of the land. It clearly appears from this record that the respondents intended and believed that they were obtaining full title to the land in question. It likewise clearly appears that James T. Simmons intended to and believed that he had parted with all his title to the same.

A few months after the death of their father in 1917, appellants were informed that nothing was coming from the estate of their father, and yet this action was not commenced for approximately six years thereafter.

If the theory of appellants' action be for fraud, they are barred by the three-year statute of limitations. The respondents have, under color of title, been in possession of the land and paid all taxes thereon in good faith for more than seven years, and have had

the open, notorious and adverse possession thereof under claim of right and ownership for more than ten years.

On any theory of the case, appellants' cause of action is barred.

Judgment affirmed.

FULLERTON, C. J., MAIN, MITCHELL, BEALS, PARKER, TOLMAN, and ASKREN, JJ., concur.