OTTO S. GRUNBAUM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 99318, 99319.   Promulgated June 25, 1941.

*George E. H. Goodner, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, for the respondent.

OPINION.

HILL: The issue before us is whether or not dividends on stock owned by petitioner before his marriage and stock acquired by contract entered into before his marriage are includable in petitioner's gross income as income from separate property. Petitioner contends that he and his wife orally agreed at the time of their marriage that all separate property of each of them should be community property. He asserts that this agreement was reaffirmed throughout their marriage and was finally put in written form in 1937. He urges two alternative contentions. He contends that even if we find that there was no oral agreement which converted separate property into community property, the 125 shares of stock subject to the escrow agreement were acquired after marriage and dividends from those shares and their increment are community income. Petitioner's second alternative contention is that, if we find that there was no oral agreement and hold that the stock in escrow was not acquired after marriage, then at least $20,000 of the purchase price of the Woodhouse stock was paid from community funds and one-fifth of those shares became community property.

Respondent contends that the contract between petitioner and Woodhouse marked the acquisition of such stock by petitioner as his separate property. Respondent argues that the evidence is insufficient to establish an oral agreement between petitioner and his wife converting their separate property into community property.

The applicable provisions of law are Remington's Revised Statutes of Washington, sections 6890 and 6892.[1]

We are of the opinion that petitioner has not presented sufficient evidence to establish the existence of an oral agreement between himself and his wife. The only evidence regarding the alleged oral agreement was the testimony of petitioner and his wife. This evidence is counterbalanced by the fact that petitioner reported as his separate property dividends from the company's stock in both his original and amended income tax returns for the years 1919 and 1920. Petitioner testified that neither he nor his wife had ever mentioned the agreement to any one before the controversy giving rise

---

[1] SEC. 6890. Separate property of husband.

Property and pecuniary rights owned by the husband before marriage, and that acquired by him afterward by gift, bequest, devise or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, encumber, or devise, by will, such property without the wife joining in such management, alienation, or encumbrance, as fully and to the same effect as though he were unmarried.

[Section 6891 contains similar provisions with respect to the wife.]

SEC. 6892. Community property defined—Husband's control of personalty.

Property, not acquired or owned as prescribed in the next two preceding sections, acquired after marriage by either husband or wife, or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof.

to this proceeding. The instrument entitled "Declaration Converting Separate Property Into Community Property", executed by petitioner and his wife on December 23, 1937, neither refers to a preexisting oral agreement nor suggests the existence of one. The title of the instrument, together with the phrase "shall from this date be the property of the community of ourselves as husband and wife", to our mind, completely negatives the testimony in regard to the alleged oral agreement. It is necessary, therefore, that we consider petitioner's alternative contentions.

Petitioner argues that he did not acquire the 125 shares of the company's stock from Woodhouse until the stock was released from escrow in 1920. He points to the provision of the escrow agreement under which the bank was instructed to deliver certificates of stock to Woodhouse in the event of default by petitioner and contends that he had no property in the stock until he had fulfilled his obligations under the contract.

We do not agree with this contention. Petitioner, prior to his marriage, acquired the stock from Woodhouse by purchase, subject to forfeiture of the stock and all payments thereon in case of default in making payment of the purchase price. There was no default and such payments were completed more than a year after petitioner's marriage and thereupon the certificates of stock issued in his name were surrendered to him by the escrow agent. Immediately upon the execution of the contract of purchase the stock ownership of Woodhouse and wife ceased and he and his wife accordingly resigned as directors and officers of the company and surrendered the full management and control thereof to petitioner. The latter thereupon, in the exercise of full proprietary rights in the entire stock of the company, had the company declare and pay to him monthly dividends on all of its outstanding stock in amounts equal to the monthly installments due on the price of the stock purchased. These dividends were applied on such purchase price to the extent of $70,000. The evidence and concessions by petitioner show that at least $80,000 of the purchase money was paid from the separate funds of petitioner. The evidence does not disclose the source or character of the funds with which the remaining $20,000 of the purchase price was paid.

We have previously considered the question of whether or not rights under a contract which after marriage materialize into legal title are separate or community property in the State of Washington. *William Semar*, 27 B. T. A. 994. In that case we stated:

It is quite obvious that the petitioner had much more than, as he contends, a mere option to buy the stock. He had a right to have the dividends which might be declared on such stock applied by the stockholders toward the purchase of the stock for himself. While not owning legal title to the tree, in other words, he was to be given its fruits; the right to enjoy the fruits being, of course, one

of the most important incidents of ownership. * * * We are of the opinion that petitioner's contract right on January 1, 1924, which later brought him title to the company's shares, was one of real substance and clearly "property" within the meaning of the Washington statutes.

And we are of the opinion that petitioner's "property" was acquired before March 4, 1924, when he married. It has been said:

" As between husband and wife, when a right, legal or equitable, is acquired whether before or during marriage, all things of value into which the initial right develops by the performance of conditions, the running of time or the like, or into which it is converted by an assignment, or if the initial right rests in obligation, all that which is obtained through the performance, discharge, satisfaction, enforcement or assignment of the obligation, are deemed in law to have been acquired as of the date of the acquisition of the initial right, and take the character, as separate or common, of that right. (McKay Sec. 517, p. 352.) * * *

* * * * * * *

There is no doubt on the authorities that this rule obtains in Washington. The date of acquisition of property determines its character as separate or community property, *In re Brown's Estate*, 214 Pac. 10 (Washington) ; and cases therein cited. And the date of acquisition taken is that when the equitable interest arises and not when the legal title is transferred, *Guye* v. *Guye*, *supra; Ahern* v. *Ahern*, 71 Pac. 1023 (Washington) ; *Forker* v. *Henry*, 57 Pac. 811 (Washington) ; *Teynor* v. *Heible*, 133 Pac. 1 (Washington). The same rule appears to be general, as stated by McKay, § 533, *supra*, and to obtain also in Nevada, *Barrett* v. *Franke*, 208 Pac. 435, 437; and in California, *Vieux* v. *Vieux*, 251 Pac. 640, 643. Cf. 5 R. C. L. 834.

In the case of *In re Binge's Estate*, 105 Pac. (2d) 689, the Supreme Court of Washington stated:

It is the rule in this state that the status of property, whether real or personal, becomes fixed as of the date of its purchase or acquisition, and that the status, when once fixed, retains its character until changed by agreement of the parties or operation of law. Property acquired through contractual obligation, as between husband and wife and all others claiming under them, has its origin and is acquired as of the date when the obligation becomes binding, and not as of the time when the money is paid or the thing is delivered or conveyed. The fruit of the obligation is legally acquired as of the date when the obligation becomes binding.

On these authorities we hold that petitioner acquired the Woodhouse stock at the time of the execution of the contract of purchase thereof, to wit, April 30, 1919, and that it became thereby his separate property.

Petitioner presents as an alternative contention that upon the basis of the facts as we have found them at least 20 percent of the purchase price of the Woodhouse stock was paid with community funds and that therefore such stock to the extent of 20 percent thereof was the community property of petitioner and his wife. This contention is apparently based on the fact that under the laws of Washington property acquired by a spouse during the marital relation is presumed *prima facie* to have been acquired with com-

munity funds and is therefore presumed *prima facie* to be community property. This presumption can not be availed of by petitioner for the reason that the stock in question was not acquired by petitioner during the existence of the marital relationship. It was acquired before his marriage. Under the laws of Washington there is no presumption that payment during the existence of the marital relation on the purchase price of property acquired before marriage is made with community funds. To establish such fact direct and positive evidence is required. "Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and, when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character until some direct and positive evidence to the contrary is made to appear." *Guye* v. *Guye*, 63 Wash. 340; 115 Pac. 731, 735, cited with approval in *In re Binge's Estate, supra*, at page 702.

Since the stock purchased from Woodhouse became petitioner's separate property at the time of its purchase on April 30, 1919, and was his separate property at the time of his marriage, the petitioner, in order to support his contention that the stock or any percentage thereof became community property after his marriage, had the burden of showing by evidence that the purchase price of the stock or a part thereof was paid from community funds. There is no such evidence in the record.

We hold, therefore, that the stock purchased by petitioner from Woodhouse and the shares of stock subsequently derived therefrom as the result of a stock dividend distributed by the company to petitioner were his separate property during the taxable years 1936 and 1937. The number of shares of such stock was 1,775. We hold further that the 113 shares of the company's stock owned by petitioner at the time of his marriage, other than that purchased from Woodhouse, and the stock derived therefrom as the result of a stock dividend distributed by the company to petitioner, were the separate property of petitioner in such taxable years. The number of shares of such stock was 1,096.4. We hold further that 501.52 shares of the company's stock held in the name of petitioner were the community property of petitioner and his wife in the taxable years and that petitioner owned a community one-half interest therein. It follows that the dividends distributed by the company in the taxable years 1936 and 1937 on 2,871.4 shares of the company's stock were income to petitioner as his separate property and that one-half of such dividends distributed on 501.52 shares represented community income to petitioner, all of which is properly includable in petitioner's income in computing his tax liability for the years in question. This is in accordance with respondent's determination.

*Decision will be entered for respondent.*